## WILLIAMS vs. SIMMONS.

1. When money is collected under execution from an administrator's surety, on a decree of the Court of Probate against the administrator in favor of the administrator *de bonis non*, and the decree is reversed by the Appellate Court after the collection of the money, and after its distribution by the administrator *de bonis non* among the distributees of the estate, the surety may recover the money so paid in *assumpsit*.

ERROR to the Circuit Court of Tallapoosa.
Tried before the Hon. ROBERT DOUGHERTY.

This is an action of ASSUMPSIT brought by the plaintiff in error against the defendant in error to recover a certain amount of money, on the following facts and circumstances: One Price, in virtue of his office as sheriff, was the administrator with the will annexed of one Burns, deceased, and the plaintiff in error and one Haynes were his securities on his sheriff's bond. Price was subsequently removed from the administration, and the defendant in error was appointed administrator *de bonis non* of the estate of the said Burns. The defendant in error, Simmons, on the 17th day of January, 1845, obtained a decree in the Orphans' Court of Benton county against the said Price, the former administrator, for the sum of $1,982 $\frac{69}{100}$, that being the balance found due to said estate from the said Price. On the 22d day of February, 1845, an execution was issued from the Orphans' Court of Benton on said decree, and on the 7th of March, 1845, it was returned by the sheriff of Benton county "no property found." On the

28

18th of March, 1845, the defendant in error sued out another execution against the said Price, and the said plaintiff in error and said Haynes, as his securities on his sheriff's bond as aforesaid, returnable the first Friday in June, 1845. This execution was placed in the hands of the sheriff of Dallas county on the 8th day of April, 1845, and under it the sheriff of Dallas collected, by a levy and sale of the property of the said plaintiff in error, the sum of $1,614 $\frac{70}{100}$. On the 8th of March, 1845, another execution was sued out, returnable on the first Friday in April, 1845, and was placed in the hands of the sheriff of Benton county. On this execution there was made, out of the property of the plaintiff in error, the further sum of $553 $\frac{67}{100}$.

On the 5th day of April, 1847, the defendant in error, as administrator *de bonis non* of said estate, had a final settlement of said estate in the Orphans' Court of Benton county. The balance found to be in his hands was then distributed to the six legatees under the will of the said Burns, and the several distributive shares paid, whilst the said decree in said Orphans' Court was in full force.

In the fall of 1847, Price sued out a writ of error to the Supreme Court, to revise the decree rendered against him by the Orphans' Court of Benton county; and on the 11th of February, 1848, the said decree was reversed.

The defendant in error then cited the said Price again to settle his accounts; and on that settlement, the said Price endeavored to prevent a decree being rendered against him, by showing the fact that the former balance found against him had been paid by his security, the plaintiff in error. This defence prevailed in the said Orphans' Court, and the petition and citation calling upon said Price to settle as aforesaid were dismissed. From this decision of the Orphans' Court the defendant in error took a writ of error, and at the June term, 1850, of the Supreme Court, the said last named decree was reversed, and the cause remanded.

On the second Monday of November, 1850, the Orphans' Court of Benton county rendered another decree against the said Price, for the same amount as that rendered on the 17th of January, 1845. From this decree another writ of error was sued out by said Price to the Supreme Court, and at the June term of said Court, 1852, it was affirmed.

The record further shows, that when the estate of Burns was finally distributed by the defendant, it was worth in money and property the rise of ten thousand dollars. It further appears, that some of the distributees or legatees are solvent, and some are insolvent; that the said Price also is insolvent. These are all the facts deemed material to a proper understanding of the case.

Thereupon the Court charged the jury, that if they believed all the foregoing evidence, they must find for the defendant; to which the plaintiff excepted.

The court further charged the jury, that although they might believe the estate of said testator Wm. Burns, dec'd, was solvent, yet, if they believed all the evidence, they must find for the defendant. To this charge also the plaintiff excepted, and prayed the court to charge the jury, "that if they believed that on the 17th of January, 1845, the Orphans' Court of Benton county rendered the decree against Price, as shown in the foregoing evidence; and if executions thereunder issued, as shown in the foregoing evidence; and if, under executions so issued, the property of the plaintiff in this suit was levied on, and sold by the sheriff of Dallas, and the sheriff of Benton counties, as shown in evidence; and if afterwards, and before this suit was commenced, the said decree so rendered by said Orphans' Court on the 17th of January, 1845, was reversed by the Supreme Court of Alabama, as shown in the foregoing evidence; and if the estate of the said Wm. Burns, dec'd, was solvent, then the plaintiff in this suit is entitled to recover." The court refused the charge thus asked, and the plaintiff excepted.

The plaintiff then took a non-suit and his bill of exceptions; and here assigns for error the charges of the court as given and the refusal to charge as prayed.

BELSER & RICE & MORGAN, for plaintiff in error:

1. In all cases of promises, express or implied, made to or by an administrator, after the death of the intestate, the action lies by or against the administrator personally. Therefore, where an administrator, as such, has by use of process collected money, under a judgment which is afterwards reversed, the action to recover it back must be against him personally.

Grier v. Huston, 8 Serg. & Rawle, 402; Gilmer v. Weir, 8 Ala. R; Bourdine v. Roper, 7 Ala. R; Whiteside v. Jennings, 19 Ala. R.

2. The fact, that the administrator has, after such collection of money by him and before the reversal of the judgment under which he collected it, made a final settlement of the estate and paid over the money to the distributees, is no bar to such action to recover it back from him. If such fact can be made available at all for the defendant, it can only become so by proving in connexion with it "that the estate of the intestate is insolvent;—because if there are assets, he may indemnify himself." Grier v. Huston, *supra*, 8 ib. 402; Simmons v. Price, 21 Ala. Rep; 1 Story's Equity Jur. Section 91 and note; Alexander v. Fisher, 18 Ala. Rep. 374.

3. Where the proof shows that the plaintiff, thus suing to recover back money made out of his property by execution sales, was one of several securities of a sheriff who was *ex officio* an administrator, and that the executions under which the sales were made were against such sheriff and all his sureties, the action cannot be defeated by proving that, after the reversal of the judgment, the defendant as administrator obtained another decree against the plaintiff's principal and the sureties. Joyner v. Third Sch. Dist. in Egremont, 3 Cushing's Rep. 567.

4. The first decree is absolutely void, because the judgment could not be rendered in favor of the administrator Simmons, and because it is for an amount which had already been administered on. Price v. Simmons, 13 Ala. 749; 11 ib. 872.

5. All the executions are void, because founded on a void judgment, and because made returnable to a wrong term of the court. Westmoreland v. Hale, 11 Ala. 122; 15 ib. 576; 3 ib. 707.

6. Money raised on a void execution is not assets of the estate. 7 Ala. 466; 8 ib. 72; 10 ib. 154.

7. The administrator can recover out of the legatees. 9 Ala. 803; 8 Serg. & Rawle, 402; 1 Story's Eq. Jur. 91.

8. The money can be recovered back from Simmons by Williams. Stewart v. Connor, 9 Ala. 803; 7 ib. 486; 9 Johnson, 201.

Williams v. Simmons.

FALKNER, *contra:*

Although where a judgment is reversed, an action will lie to recover back money collected on it, as a general rule; yet, if in equity and good conscience the party who has received it is entitled to it, it cannot be collected in an action of assumpsit. See Duncan v. Ware's Ex'rs, 5 S. & P. 119; Dupuy v. Roebuck, 7 Ala. 484.

If an administrator pays out money in the course of his administration, without notice from one who claims it, it cannot be recovered back from him in an action of assumpsit. See Bourdine v. Roper, adm., 7 Ala. R. 466; Yarborough v. Wise, adm., 5 Ala. R. 292; Wilson v. Sergeant, 12 Ala. R. 778; Grier v. Huston, 8 Ala. R. 402.

If a stake holder pays money over to the person supposed to be entitled to it, before notice, it cannot be recovered by an action against him. See Ivey v. Phifer, 11 Ala. R. 535.

An agent is not liable to be sued for money in his hands, which he has paid over to his principal before notice or demand. See Story on Agency, § 301 and note on page 381; Thompson v. Stickney, 6 Ala. R. 579; Upchurch v. Nosworthy, 15 Ala. R. 705; Baring et al. v. Williams, Treas., 17 Ala. R. 520; 1 H. & Johnson, 405.

At the time the original judgment was rendered, it should have been rendered in favor of the distributees of the estate, and for that error was reversed : but before the writ of error was sued out, or notice given, the money had gone into the hands of those entitled to receive it according to that decision. See Price v. Simmons, 13 Ala. R. 749.

If the distributees of the estate were entitled to the money at the time they received it, how can Williams, in "equity and good conscience," recover it back, Price, his principal, being insolvent?

If Williams recovers in this action, then Simmons must recover back from the distributees; he must also collect the present decree and pay it over; the law always discountenances useless litigation, and does not require this.

GIBBONS, J.—The questions presented by the bill of exceptions in this case must be considered in some measure as *res adjudicata* in this court. In the case of Price v. Sim-

mons, adm'r, decided in this court at the last term, and reported in 21 Ala. 337, the court uses the following language: "There is nothing to protect Simmons from a recovery by Williams, in his action in the Circuit Court of Tallapoosa, for the money paid to him by Williams under the decree of the Orphans' Court against Price, which was afterwards reversed." Price was then seeking to reverse the decree of the Orphans' Court of Benton county, because he was not allowed a credit for the money paid by Williams, the present plaintiff, on the first decree rendered in the Orphans' Court of Benton against him, and which was afterwards reversed in this court. This court affirmed the last decree of the Orphans' Court of Benton county against Price, on the ground that Simmons, the defendant in error, had no defence against the present plaintiff in error, to avoid the recovery by him for the money which he had paid on the first decree against Price. The question now presented is substantially the same as the one presented in that case, and but that the parties are different in this case it would amount to *res adjudicata.* We feel bound to regard the decision in that case as entirely decisive of this. Were it otherwise, however, and were the question now presented on the record before us for the first time, we should adopt the same conclusion.

A judgment reversed is regarded as if it had never existed, and the parties are restored to their rights as they were before it was rendered. Dupuy v. Roebuck, 7 Ala. 484; Simmons, adm'r, v. Price, adm'r, 18 ib. 405. Before the first judgment was rendered against Price, the defendant in error had no claim whatever upon Williams; nor did such claim arise, until the decree was rendered, and execution returned "no property" as to Price. Clay's Digest, 305 § 45. It follows necessarily, then, that when the judgment, which was the very basis of the claim, was reversed, the right growing out of it to collect the money from Williams, on the return of " no property " as to Price, ceased to exist.

After the reversal of the first decree, then, the defendant in error held the position of a party who had possessed himself of the property of another, without even the color of right to retain it. True, he had the right when he acquired the possession, but he has since lost it, and his possession has

Williams v. Simmons.

become tortious; nor will the fact that he has since obtained another decree against Price, avail him in a court of law. That decree cannot have a retrospective operation, and relate back so as to make that legal which was before illegal and tortious.

A different rule might perhaps prevail, if the claim against the plaintiff had existed anterior to the decree, and independent of it. Then the right to withhold would probably arise on principles governing setts-off, and allow the defendant in error to retain in his hands what was, *ex æquo et bono*, his own. But the right to a sett-off, to be available, must be perfect at the time of suit brought, and not acquired during its pendency.

But it is insisted, that the defendant holds the position of an agent or stake-holder, and having paid over the money to the legatees, innocently, with the full belief that it belonged to the estate, and without notice that a writ of error would be sued out, therefore he ought not to be held liable to refund. The law cited as applicable to an innocent agent or stake-holder who pays money to the party for whom he ostensibly receives it, without notice that there is any other or better claim to it, is conceded. If the facts of the present case warranted the application of the principles which govern in such cases, the position would undoubtedly be well taken. But it is conceived that those principles do not apply to the present case. The money was not received by the defendant in error as an agent merely, or as a stake-holder, who receives money voluntarily paid; but it was collected by him purely on the ground that he had the legal right to collect it, and that right he had, as he supposed, established by law. He proceeded upon his judgment, and forced the collection of the money from the plaintiff by execution. He did not receive the money in the right of another person, but in his own right as administrator *de bonis non*. He was bound to see, and doubtless, as he supposed, did see that his proceedings were legal. In the collection of the money he stood strictly upon his legal rights, and he cannot complain that the plaintiff in error, after the judgment is reversed, stands upon his; nor can he be said to hold the position of one paying out money without notice that there was an adverse claim to it in his hands. The fact that he collected the money forcibly by law, and alone upon

the ground of legal right in himself, must always affect him with notice, so far as respects the rights of the plaintiff in error.

Again, it is insisted that the plaintiff in error ought not to recover, because his right is not founded in equity and good conscience; and in support of this position, we are referred to the cases of Duncan v. Ware's Ex., 5 S. & P. 119, and Dupuy v. Roebuck, 7 Ala. 484. We do not intend to contravene these cases, or in any manner question their authority. But how does this case stand as regards equity and good conscience? The actual debt from Price to the defendant in error has been paid by the plaintiff in error. This is admitted, and yet the defendant in error has another judgment against Price for precisely the same amount, and for the same cause of action. The plaintiff in error is still, as before, his security on his bond as sheriff, and liable to respond for his defaults. He is then as liable in law to pay the last judgment, as he was the first. If the defendant did not intend to enforce that judgment, why go through the useless ceremony of recovering it? The only way in which the parties can be placed on equal grounds, is to let the plaintiff have his judgment, by which he may defend himself against the liability created by the second judgment in the Orphans' Court of Benton against Price. We think this is required, as well by principles of equity and good conscience, as by the rules of law.

The question is not presented on this record, as to what the position of the defendant in error would be, if the estate which he represents had been insolvent, and on such a state of facts we express no opinion. We have but to add, that the court below erred in its charges to the jury, and in refusing to give the charge prayed by the plaintiff. The latter charge we think a correct statement of the law arising upon the facts in evidence, and should have been given.

The non-suit in the court below is therefore set aside, and the cause remanded.

CHILTON, C. J., not sitting.