JAMES GUY FAIRFIELD *v.* CLARA TEXEIRA MEDEIROS
AND ALVIN EMORY MEDEIROS, AND EDWIN P.
MURRAY, FRANK E. MIDKIFF, ATHERTON RICHARDS,
RICHARD LYMAN, JR., HERBERT K. KEPPELER (Trustees
under the Will and of the Estate of Bernice P. Bishop, Deceased).

### No. 4457.

August 25, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND CIRCUIT JUDGE CORBETT IN
PLACE OF LEVINSON, J., DISQUALIFIED.

OPINION OF THE COURT BY MIZUHA, J.

The principal question raised by this appeal is whether there is sufficient evidence to support the imposition of a constructive trust on a leasehold estate assigned by plaintiff-appellee, James Guy Fairfield, to defendants-appellants, Clara Texeira Medeiros and Alvin Emory Medeiros.

Defendant Alvin Medeiros and plaintiff first became acquainted in 1951 or 1952 when plaintiff's construction company hired defendant Medeiros to do hauling work. For approximately four years plaintiff and defendant Alvin Medeiros had been together constantly and practically everyday. In 1954, plaintiff's construction company went into bankruptcy. In March 1955, plaintiff and his wife were divorced. The two men became even closer friends after the bankruptcy and divorce.[1]

---

[1]Defendant Alvin Medeiros testified in answer to questions asked by his own counsel:

"Q Did you ever become a personal or social acquaintance of Mr. Fairfield?

After the bankruptcy and prior to the assignment of the lease-hold estate the two men engaged in two business deals. There is substantial evidence in the records to show that a close business relationship existed between the two as well as a close personal and social relationship; and that during this period plaintiff was emotionally mixed up over the bankruptcy and divorce and drinking heavily.

The leasehold was acquired by plaintiff in 1949. After the divorce in 1955, plaintiff became the sole owner of the property. Prior to the assignment to defendant Clara Medeiros on February 13, 1956, plaintiff found himself in financial trouble. Plaintiff owed Bacon & Company approximately $2,400.00 and a suit was filed. There was a federal tax lien on the leasehold property and plaintiff was behind on his mortgage payments.

It was during this period that the subject of the assignment

---

"A   Yes, I did.

"Q   And when was that?

"A   Well, I used to get along with Fairfield since I started working with Fairfield Construction right up to the present time of 1962.

"Q   Was there any particular time when you developed any close friendly personal relationship socially aside from business?

"A   Well, I took care of him. In 1955 when he got his divorce Jim called me and told me that he needed help . . .

\*   \*   \*   \*   \*

"Q   Go ahead. You say at the time of the divorce - - -?

"A   Jim called me one day at my office and told me that he had to move out so I went down and found a place for him to stay. That happened in the latter part of 1955. I found a place for him to stay. I found an apart-ment up at Pensacola Street. Moved all his furniture there and all his clothing and stuff that he had, his belongings, and from that time on helped him in every way that I could.

"Q   Well, was he having any problems at that time?

"A   Yes, Jim was all mixed up; he was getting a divorce; he had some-body else's obligations plus the bankruptcy, and all of this stuff that he was having, so I tried to help him as much as I can, and I think I did.

"Q   What did you do to help him, just generally?

"A   Well, we used to take him for breakfast, going down and taking him for dinner, and in any other way that he needed help.

"Q   What was the reason for feeding him?

"A   Well, Jim was in a position that he was all mixed up, and he was starting to drink a lot. I encouraged Jim to lay off of that liquor and try to keep on my side, and I tried it and kept on trying and kept on trying but he wouldn't listen, so I still gave him another chance."

of lease came up between the plaintiff and defendant Alvin Medeiros. Plaintiff testified as follows:

"Q   When was the first time you ever had any discussion with Mr. Medeiros relative to your property at Waialae-Kahala?

"A   Well, I had my divorce that was bothering me, and I had this bankruptcy before that, and I had Bacon & Company on my neck, and I was back in payments on my house for a few months, and Mr. Medeiros knew all my business, and he said, 'Jim, why don't you just let Clara take care of this property?' 'She will take care of it for you and turn it back to you any time you wanted it.' I said, 'That's the only thing I have left that's mine, and I want it for my children.' And he says, 'Well, then - - -' In other words, he kept after me, 'Why don't you just sign it over to Clara, and she will take care of it for you?' "

The actual value of the property in February 1956, was $23,000.00  At the time of the transfer, there was approximately $11,000.00 owed on a mortgage and was rented for $250.00 a month. Mortgage payments were $86.50 a month. On the same day as the assignment, both defendants assumed plaintiff's debt to Bacon & Company at the compromise figure of $1,600.00, payments to be $50.00 per month. Plaintiff paid to defendant Clara Medeiros "$1,000 to clear up arrearages." During the trial defendants abandoned the defense that the leasehold estate was a gift from plaintiff to defendants.

Plaintiff testified that although he had tried on several occasions to have the property transferred back to him, he had not been successful, and thus was forced to bring this suit to recover the leasehold property. The trial court found that plaintiff "has established fairly, substantially and clearly that the parties never intended that this be an actual sale of the property but that the property was to be turned over to the Medeiroses at a time when the plaintiff Fairfield was not at his physical best and at a time when he was suffering financial reverses," and concluded that a constructive trust should be "imposed against this property and that the defendants, Alvin Medeiros and Clara Medeiros, be declared constructive trustees; that the property be reconveyed to the plaintiff Fairfield; . . . ."

"H.R.C.P., Rule 52(a) provides that 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' The question before this court is whether we are

left with a definite and firm conviction that a mistake has been committed by the trial court and that the findings of the trial judge are 'clearly erroneous'. *Miller* v. *Loo*, 43 Haw. 76; *Lum* v. *Stevens*, 42 Haw. 286; *Hawaii Builders Supply Co.* v. *Kaneta*, 42 Haw. 111; *Lima* v. *Tomasa*, 42 Haw. 478." *Peine* v. *Murphy*, 46 Haw. 233, 238-239, 377 P.2d 708, 712.

It is our opinion that the findings by the trial court are fully supported by the evidence which clearly and convincingly showed that a confidential relationship existed between plaintiff and defendants and a subsequent breach of confidence by defendants to sustain the trial court's decision to impose a constructive trust on the leasehold property. *Meheula* v. *Hausten*, 29 Haw. 304, 313; *Jones* v. *Jones*, 30 Haw. 565; *Wery* v. *Pacific Trust*, 33 Haw. 701; *De Mello* v. *De Mello*, 34 Haw. 922.

We have carefully considered other specifications of error and find them without merit.

Affirmed.

*V. Thomas Rice* for defendants-apellants.
*Robert A. Franklin* for plaintiff-appellee.