442 P.2d 97

Edna (Van-Y) MARKEL, Appellant,

v.

TRANSAMERICA TITLE INSURANCE COMPANY, formerly known as Phoenix Title and Trust Company, Trustee, and Virginia R. Van-Y, Appellees.

No. 9210–PR.

Supreme Court of Arizona.

In Banc.

June 5, 1968.

Rehearing Denied July 9, 1968.

Alan Philip Bayham, Raymond Huff-steter, Phoenix, for appellant.

**356**

Divelbiss & Gage, by G. David Gage, Phoenix, for appellees.

McFARLAND, Chief Justice.

This case is before us on a petition for review of the decision of the Court of Appeals, 6 Ariz.App. 585, 435 P.2d 714, affirming the judgment of the trial court. Decision of the Court of Appeals vacated.

In December 1939 plaintiff Edna Markel obtained a divorce from Earl E. Van-Y, hereinafter called Earl, in Sedgwick County, Kansas, where they were both living. The divorce decree approved a written property settlement in lieu of alimony, by which Earl agreed to give plaintiff "one-half interest in any funds that may be obtained through" the sale of a parcel of real estate located in Arizona. Subsequently Earl married defendant Virginia Van-Y, hereinafter referred to as Virginia. The Arizona property passed, through several parties, to Virginia.

In 1957 she sold the property for $25,000, describing it as her sole and separate property. Transamerica Title and Trust Company (then called Phoenix Title and Trust Co.) was made escrowee and trustee. The transfer of the property to Transamerica, as trustee, was to expedite the deeding of part of the property each time a payment was made—an arrangement commonly known as a subdivision trust. Knowledge of this sale came to the notice of plaintiff, and, on April 30, 1959, she brought an action against Virginia and Transamerica, asking the court to hold that Transamerica hold the reversionary interest in the realty in trust for plaintiff; that Transamerica should hold $13,037.50 and interest for plaintiff's use and benefit, and in due course should distribute same to plaintiff; that Virginia be ordered to pay plaintiff $11,865 wrongfully paid to her by Transamerica; and that each defendant be restrained from making any disposition of Virginia's reversionary interest in the property or the proceeds of the trust, pendente lite.

Transamerica, though served, failed to appear, and a temporary injunction was granted by the court on May 18, 1959, ordering Transamerica not to pay out any money from the trust until further order of the court. Plaintiff posted a five-hundred-dollar bond.

On June 18, 1959, the court issued a permanent injunction which enjoined Transamerica from making any disposition of Virginia's reversionary interest, or her interest in the proceeds, until it paid her the sum of $13,037.50 and interest. The $500 bond was exonerated.

On January 22, 1960, the default judgment against Transamerica was set aside and the injunction necessarily fell with the judgment. Transamerica then made two payments to Virginia—$4,402 on February 17, 1960, and $4,214.57 on December 30, 1960.

Before any more payments were made, a hearing on the merits of the case took place, resulting in a judgment for defendants at the close of plaintiff's case. An appeal was taken, and, on February 2, 1966, we reversed and remanded the case for trial, holding that plaintiff had made out a prima facie case for the imposition of a constructive trust, in the trial court. Markel v. Phoenix Title & Trust Co., 100 Ariz. 53, 410 P.2d 662.

In 1962, 1963, and 1964, while the appeal was pending, Transamerica received and disbursed to Virginia the rest of the payments due, from the sale of the real estate, totalling over $8,000 including interest. On April 7, 1966, after our decision, plaintiff filed a second amended complaint, setting forth the facts alleged in the original complaint which we held in Markel v. Phoenix Title, supra, had been sufficiently proven to constitute a prima facie case for the imposition of a constructive trust. The amended complaint set out a copy of Edna's written property agreement with Earl, and alleged that it had been approved by her divorce decree; that Virginia had entered into an escrow and a secret trust agreement with Transamerica bearing number 2197; that thereafter Transamerica "received and wrongfully made disbursements to Virginia Van-Y in the aforesaid trust

after this action was commenced, for the sum of $13,037.50"; that defendants "have fraudulently caused said funds to be transmitted to Virginia Van-Y * * * to deprive plaintiff of her rights to one-half the proceeds * * * and that defendants' aforesaid wrongful transfer was in breach of defendants' obligation, after being fully placed on notice of plaintiff's rights and was in direct breach of its duty to plaintiff. * * *" The prayer was for money damages only, in the sum of $13,037.50 and interest, and "for such other and further relief as to the court may seem meet and proper."

The issues as stated in the first complaint were clear and would have permitted recovery. The second complaint, after setting forth the facts alleged in the first complaint in regard to the written property settlement in the divorce decree, the sale and the payments thereunder to Transamerica as trustee, further alleged the subsequent wrongful disbursements. As it is, the second amended complaint may be described by the words used in Barnes v. Eastern and Western Lumber Company, 205 Or. 553, 287 P.2d 929, in which the Supreme Court of Oregon said:

"* * * The facts stated in the complaint would have permitted recovery, as we have indicated, on several theories. Among the possible theories were deceit, conversion * * *, money had and received, the recovery of specific property by constructive relief, or any other theory within the scope of restitution."

■ The allegations of the second complaint in the instant case are sufficient to permit plaintiff to prove her original contention that defendants were, and still are, constructive trustees of the proceeds of the sale of the property. The new material is also sufficient to permit plaintiff to prove the elements of a conversion of those proceeds, as she alleges a wrongful transfer of the money by Transamerica after knowledge by it of plaintiff's claim of the right to possession of the funds.

■ If defendants had any doubts of what was meant by the allegations of the second amended complaint, they could have moved for a more specific statement. Long v. Arizona Portland Cement Company, 89 Ariz. 366, 362 P.2d 741; Davidson v. All State Materials Company, 101 Ariz. 375, 419 P.2d 732. Rule of Civil Procedure No. 8 (16 A.R.S.) states that the complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief" and a "demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded." See Lun v. Mahaffey, 94 Or. 292, 185 P. 746.

Transamerica filed a new answer, admitting—with the following exceptions—all of the allegations of the complaint: (1) It denied (on information and belief) that the property settlement agreement existed; (2) It denied that the trust agreement between it and Virginia was secret; (3) It denied that the $13,037.50 received by it and disbursed to Virginia was disbursed wrongfully; and (4) It denied (on information and belief) that it fraudulently transmitted funds from the trust to Virginia, and alleged that it had no information of any fraud or wrongdoing. The answer also alleged that it was not under any injunction when it disbursed the funds.

■ Denial (1) may be ignored, since Virginia, in answer to interrogatories, admitted the existence of, and her knowledge of the contents of, the property agreement. Denial (2) is completely immaterial. Denial (3) is clearly a legal issue, rather than a fact question; it must be resolved by the application of legal principles, not by the introduction of evidence. Denial (4) must be construed to mean that Transamerica had no knowledge of any fraud or wrongdoing on the part of Virginia at the time it accepted the trust, since there can be no doubt that it had knowledge of her wrongdoing after the case was tried the first time. It was a party to the first appeal,

and was represented by counsel throughout that appeal.

■ It is therefore clear that the real issues in this case are: 1. Was Transamerica's action in disbursing funds to Virginia, after knowledge that plaintiff claimed them to be encumbered with a constructive trust in her favor, wrongful or fraudulent? and 2. Was Transamerica excused from the consequences of its disbursements because of the trial court's judgment and plaintiff's failure to try to get a stay order? These issues present questions of law, not fact; hence, they may be resolved on a motion for summary judgment.

Such a motion was filed by Transamerica, on the ground that there was no material issue of fact. In support thereof, it attached an affidavit setting out the dates and amounts it had paid Virginia from money received under the trust. The affidavit contained nothing else! In reply to the motion, plaintiff filed only a memorandum of authorities and did not controvert the affidavit. Transamerica also filed a memorandum of authorities.

On October 14, 1966, the trial court applied Rule 56(e), Rules of Civil Procedure (16 A.R.S.), and granted summary judgment to Transamerica, stating as its reasons (1) that plaintiff failed to respond with specific facts and affidavits, and (2) that there was no genuine issue of fact raised by the pleadings.

■ The first reason represents an incorrect application of Rule 56(e). That rule states that if plaintiff does not respond with specific facts, summary judgment "if appropriate" shall be entered against her. This is but another way of saying what is said in Rule 56(c)—namely, that judgment shall be entered if it appears that there is no genuine issue of fact *and* that "the moving party is entitled to a judgment as a matter of law." The rule contemplates that where the moving party is specific, the documents controverting his pleading must be specific. But, as we said in Carpenter v. Superior Court

etc., 101 Ariz. 565, 422 P.2d 129; in quoting from a previous case, Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187:

> " * * * if the papers of the moving party fail to show that he is entitled to judgment as a matter of law, the opposing party need not file an opposing affidavit. * * *"

■ But one cannot deny or controvert a true statement, and certainly ought not even to try to do so. Transamerica's motion is supported by an affidavit containing only true statements, viz: the dates and amounts of money distributed to Virginia. Rather than tending to prove that Transamerica is entitled to judgment, the affidavit shows that *plaintiff's* allegations are true. To enter judgment against plaintiff for failure to deny what both parties allege to be true is not a proper interpretation of Rule 56(e). If A sues B, alleging an assault and battery, and B defends by a motion for summary judgment, to which is attached an affidavit that B did in fact on a certain date commit the assault and battery, no one would argue that B was entitled to judgment because of A's failure to deny the affidavit stating the fact to be as A has alleged in his complaint!

The second reason given by the trial court for entering a summary judgment was that there was no genuine issue of material fact. We agree with the truth of this statement, and with the corollary that summary judgment must therefore be granted—but, in this case, to plaintiff rather than to defendant.

■ It has been determined in other jurisdictions that a judgment on a motion for summary judgment may be either for or against the moving party, even though the opposing party has not filed such a motion. American Auto Insurance Co. v. Indemnity Insurance Co. of North America, 108 F.Supp. 221 (Aff: 3 Cir., 228 F.2d 622). We have tacitly recognized this principle, by following it without comment in Carpenter v. Superior Court, supra.

Since, therefore, the pleadings in this case indicate that there is no material dis-

pute over the facts, and that the issues are all legal rather than factual, judgment must be for plaintiff at this stage of the proceedings, if the legal issues are resolved in her favor.

As previously indicated, the first of the two legal issues to be decided is whether it was wrongful or fraudulent for Transamerica to disburse the money to Virginia with full knowledge that plaintiff claimed it to be subject to a constructive trust. We can, at the outset, disregard any claims of *fraud* on the part of Transamerica. The worst that we can say about it is that it permitted Virginia's lawyer also to handle its interests, in a situation where they were not identical with hers, and, as a result, all of Transamerica's moves were directed toward helping her instead of toward helping Transamerica by merely remaining neutral.

■ We therefore limit this discussion to the question of whether the disbursements to Virginia were *wrongful*. In the context of the instant case, "wrongful" refers to an act by Transamerica which is a breach of its duty to plaintiff. In the former appeal of this case (100 Ariz. 53, 410 P.2d 662), we held that plaintiff had proved a prima facie case for imposing a constructive trust, based on fraud by Virginia, as to one-half of the proceeds of the sale of the property. We carefully refrained from mentioning Transamerica because there was no evidence of any fraud on its part. But, if the proceeds are encumbered by a constructive trust, the person holding them, with knowledge of the facts, must of necessity be a constructive trustee. As we said in the prior appeal, supra:

"'* * * where actual fraud does not exist in the *acquisition* of property, a constructive trust will arise whenever the circumstances make it inequitable that the property should be *retained* by the one who holds the legal title. * * *' Linder v. Lewis, Roca, Scoville and Beauchamp, 85 Ariz. 118, * * * 333 P.2d 286 * * *

* * * * * *

"'* * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.' Cardozo, C. J., in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380 * * * 122 N.E. 378, * * *" [Italics added.]

■ One from whom money has been obtained by fraud does not lose title thereto as against a wrongdoer, merely because the latter transfers the money to a third party. In In Re Accles' Estate, 153 Misc. 421, 275 N.Y.S. 430, where money was fraudulently obtained from plaintiff and deposited in a bank, after which the wrongdoer died and the deposit was claimed by his executrix, the court held:

"The money, when deposited by the decedent in the Fleetwood Bank, was still the money of the Philippine Bank [plaintiff]. * * * The Fleetwood Bank was a mere depository. * * *

* * * * * *

"* * * the law makes the Fleetwood Bank constructive trustee of so much of the money as remained a balance in the decedent's account. * * *"

In Eckert v. Miller, 57 Ariz. 94, 111 P.2d 60, we approved the following language from Pomeroy, in his work on Equity Jurisprudence, 3d Ed., Volume 3, Section 1053, as follows:

"'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, * * * or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until

a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. * * *' "

This view is also supported by IV Scott on Trusts 2nd Edition, Section 462.4. In the same section, Scott states that when a constructive trust is imposed, *it arises immediately upon the acquisition of the property subject to the trust.* The author concludes by saying:

"It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court."

We hold, therefore, that in the instant case Transamerica was a constructive trustee from the time that it was served with notice of this action; that, though innocent of any fraud, its duty as constructive trustee was to hold all money that came into its hands under trust No. 2197 until the final disposition of this case; and that the turning over of the money to Virginia was a breach of its duty to plaintiff, and was therefore wrongful.

To interpret our decision in the first appeal as meaning that Virginia was a constructive trustee but Transamerica was not, is completely untenable. This is evident when one considers the situation that would have existed if Transamerica had retained the money until the conclusion of the first appeal. In such case we would have a situation where plaintiff had successfully established a constructive trust on money in the hands of a company which was not a trustee, and, therefore, might transfer the money to Virginia, or any one else, at any time. Even Transamerica could hardly contend that it could rid itself of the money, without penalty, *after* the decision on the first appeal.

The same result may be reached by analysis of cases on the subject of conversion. They hold that plaintiff need show only right to possession, not title (Triggs v. Zicovich, 117 Cal.App.2d 768, 257 P.2d 60); that money may be converted (Seekamp v. Small, 39 Wash.2d 578, 237 P.2d 489); that the property need not have come into defendant's possession unlawfully in order for defendant's acts to constitute a conversion (Byer v. Canadian Bank of Commerce, 8 Cal.2d 297, 65 P.2d 67, and Stockmen's State Bank v. Merchants' and Stockgrowers' Bank, 22 Ariz. 354, 197 P. 888); that in a case of conversion, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action (Byer v. Canadian Bank of Commerce, supra); that an executor may be guilty of conversion even though the property came to him as a part of decedent's estate (Stockmen's State Bank v. Merchants' and Stockgrowers' Bank, supra); that a bailee with notice of the claim of the true owner may not deliver it to the bailor, whereby it is lost to the owner, without rendering himself liable to the owner as for a conversion (Investment Service Co. v. O'Brien, 190 Or. 394, 223 P.2d 163, 170).

It is, of course, true that a trustee (as in the instant case) has both title and possession, while a bailee has possession but not title. Since, however, the wrong of conversion is an interference with plaintiff's possession, it would seem that a trustee is in the same position as a bailee— that is, the effect of the act would be a conversion (interference with the other party's right to possession) regardless of whether the actor is a bailee or a trustee. It has been so held in White v. Sherman, 168 Ill. 589, 48 N.E. 128, 131:

"* * * the weight of authority [is] that, where he invests trust money in his individual name, he commits a breach of trust which subjects him to the same liability as if there had been a willful conversion to his own use. * * *"

Also, in Pacific Indemnity Co. v. Grand Avenue State Bank of Dallas, Texas, 223 F.2d 513 (5th Cir. 1955):

"* * * the check, when received and deposited, was impressed with a constructive trust in favor of appellant. * * * As between Sharrock [the depositor] and appellant, this [constructive] trust

or equitable claim was enforceable against the proceeds of the check even though it had been deposited. While it is true that the Bank had no knowledge *, * * when the check was deposited * * * the Bank's knowledge was sufficient to put it upon inquiry * * * inquiry would have revealed the existence of the equitable trust with which the proceeds of the check were impressed. Notwithstanding this knowledge * * * the Bank paid itself out of funds of which it knew or should have known that Sharrock was not the equitable owner."

We hold, therefore, that the disbursement of the proceeds of the sale of the property by Transamerica to Virginia, even though made in the utmost good faith, and pursuant to a written agreement, was—after it had knowledge of plaintiff's claim of a constructive trust—both a breach of its duty as trustee, and a conversion of such funds.

The second issue to be considered is whether Transamerica's disbursement of the money to Virginia was excused or justified by the erroneous judgment for defendant, coupled with plaintiff's failure to try to obtain a stay order. Transamerica argues that the decree was valid until reversed; that all acts done pursuant to the judgment are protected by it from later becoming tortious; that upon a reversal of a judgment a defendant need return only the benefits which it still has in its possession, and since Transamerica paid out all of the money to Virginia, it need return nothing; that plaintiff, by failing to try to effect a stay, is responsible for the disbursement and cannot now be heard to complain. Transamerica extensively argues these propositions and cites cases supporting them.

Transamerica quotes 5 Am.Jur.2d 424 to the effect that a judgment is "sufficient justification for all acts done *in its enforcement* before it is reversed." [Italics ours.] Transamerica calls that statement the "universal rule," and states that virtually all decisions to that effect flow from Bridges v. McAlister, 106 Ky. 791, 51 S.W.

603 (1899), and Porter v. Small, 62 Or. 574, 120 P. 393 (1912).

In Bridges, supra, a decree directed appellant to fill up a ditch. This was done, causing flooding of appellee's land. When the decree was reversed, appellee sued for damages. The court held that, since the judgment was valid until reversed, appellant *had* to obey the order to fill the ditch, and therefore could not later be held *in tort* for damages. The court said that the judgment, though later reversed, was sufficient justification for "all acts done by plaintiff *in enforcing it."* [Italics ours.]

In Porter, supra, the decree awarded defendant Small certain rights to irrigation water, which he then took each year during the pendency of the appeal, which later reversed the decree. The suit was for damages for the taking of the water before the reversal of the decree. These cases have no bearing on the instant case. The Bridges case, supra, involves rights in regard to flood water. The Porter case, supra, involves the rights in regard to irrigation water. They are in tort for damages, and involve altogether different questions than those in the instant case.

In the original Markel case, supra, we held that there was prima facie evidence of a constructive trust. A constructive trust dates back to the date that the money was received. It was not necessary for plaintiff to secure a restraining order against Transamerica, as it was made a party to the suit and had full notice of the contract and of the pleadings in which it was alleged that there was a constructive trust on the funds paid under the sale. Under these circumstances if Transamerica wrongfully transferred these funds after this notice, well knowing the case was on appeal, it would be liable for payment of the trust funds.

If a plaintiff were afraid a trustee would not be financially able to pay the amount of the funds in the event the court held a constructive trust existed, he could— if he were financially able—protect himself by asking for a restraining order, but if

he knew it was solvent and a judgment would be good against it, this would not be necessary.

The inapplicability of the cases to the facts of the instant case is due to the fact that the usual situation is one where plaintiff prevails in the lower court, and comes into possession of defendant's property by the use of process—such as an execution—directly arising from the judgment. In such cases, restitution is a proper remedy, since such a plaintiff still has the property wrongfully taken, or has sold it and has the proceeds of the sale. In either event, retention would constitute unjust enrichment. In the instant case, however, Transamerica did not take the property or money directly from the possession of plaintiff. The money was received by Transamerica from the buyer of the property, and was turned over to Virginia without any consideration. This makes the doctrine of restitution inapplicable, because of the lack of any unjust enrichment by Transamerica.

In any event, we do not accept the contention of Transamerica that plaintiff's relief, after judgment in favor of defendants has been reversed, should be limited to money still in the hands of a defendant who has intentionally parted with the money with full knowledge of the pending appeal. Such a doctrine would leave a plaintiff helpless. Upon announcement of the reversal—if we accept this argument—Virginia could have asked Transamerica to send the money to her sister in another state. Transamerica could then disclaim all liability.

The general rule is that a reversal of a judgment restores the parties to the same position as if the action had never been tried. People ex rel. Department of Public Works v. Lagiss, 223 Cal.App.2d 23, 35 Cal.Rptr. 554, 567. As early as 1852, the Supreme Court of Alabama held that the fact that an administrator had collected money by execution issued on a judgment that was later reversed, and had paid out the money to the heirs, was no bar to an action to recover the money from him. Williams v. Simmons, 22 Ala. 425.

However, the general theory of the early cases was that there could be no successful claim *sounding in tort* for an act required by a judgment of a court of competent jurisdiction. This is as it should be. No one ought to be placed in a position where he must risk a suit for damages if he obeys, or contempt of court if he fails to obey, a lawful order of a court. However, this principle does not apply here. The instant law suit does not sound in tort. It is, rather, like the case of Tucker v. Brown, 20 Wash.2d 740, 150 P.2d 604, wherein the Supreme Court of Washington quoted with favor from the trial judge when he stated:

> " '* * * There is no question, in my opinion, of any tort at all. The substantiation of a trust is purely one of contract; * * * and whatever means or whatever allegations somebody employs to impress trust property and to recover trust property still has its basis in contract, * * *' "

It should be noted that the disbursement to Virginia was not done by command of the court. Transamerica was in no dilemma by which paying would result in a claim by plaintiff, and failure to pay would result in its being in contempt of court. *The court did not order it to pay Virginia.* Transamerica, first, could have paid the money into court under interpleader proceedings. Second, it could have held the money, explaining to Virginia that the matter was still subject to reversal on appeal. And, third, it could tell Virginia that it would not pay her the money pending the appeal unless she gave proper indemnification.

Transamerica next contends that plaintiff should have protected herself by a supersedeas bond or a stay order. Assuming for the sake of argument that she could have done this, why should she have done so? She knew that Transamerica was financially responsible. She had no fear that if the money were wrongfully paid

out, Transamerica would be unable to pay her.

In addition to the fact that general legal principles require the conclusion that the reversed judgment of the superior court did not excuse or protect Transamerica, there is direct authority on the subject. In Mann v. Thompson, 118 So.2d 112 (Fla. App.1960), the court said:

"* * * if an appellant determines to appeal without posting a supersedeas bond, it is his privilege to do so. An appellant's election not to take the steps necessary to supersede or stay the judgment or decree pending appeal does not as a matter of law bar his entitlement to restitution upon reversal by the appellate court."

In Lytle v. Payette-Oregon Slope Irr. Dist., 175 Or. 276, 152 P.2d 934, the Oregon Supreme Court had before it a case where the defendant argued that the plaintiff might have saved himself from the loss of the use of his property by giving a supersedeas bond. The court said:

"* * * To refuse him such compensation, merely because he was unwilling or unable to give a stay bond, would be manifestly unjust, and, we think, would be a denial of complete restitution. * * *"

In Lytle, supra, the Oregon Supreme Court also referred to language from an older Oregon case:

"* * * Thus, in Siverson v. Clanton, 88 Or. 261, 170 P. 933, 171 P. 1051, 1052, the complaint was construed to state a cause of action for the recovery of money paid under compulsion or duress of personal property, notwithstanding that it alleged that the defendants 'took, converted, and appropriated said' personal property 'to their own use', and thus might have been construed as in trover. * * *"

In Ure v. Ure, 223 Ill. 454, 79 N.E. 153, 156, the court's opinion states:

"* * * A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution, and, if he has sold property erroneously adjudged to belong to him, he must account to the true owner for the value. * * *"

The judgments of the Court of Appeals and of the Superior Court are vacated. The dates and amounts of Transamerica's disbursements to Virginia were as follows:

| | |
|---|---|
| February 17, 1960 | $ 4,402.00 |
| December 30, 1960 | 4,214.57 |
| January 17, 1962 | 3,994.93 |
| April 10, 1963 | 426.00 |
| | $13,037.50 |

The case is remanded to the Superior Court with directions to enter judgment for plaintiff for $13,037.50 with interest on each of the above disbursements from its date.

UDALL, V. C. J., STRUCKMEYER, BERNSTEIN, and LOCKWOOD, JJ., concur.