BERTHA DEMELLO, Plaintiff-Appellant, *v.* HOME ESCROW, INC., a Hawaii corporation, Defendant-Appellee

NO. 8194

(CIVIL NO. 3520)

FEBRUARY 24, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Plaintiff Bertha DeMello appeals the granting of summary judgment in favor of defendant Home Escrow, Inc., a Hawaii corporation, and the denial of her cross-motion for summary judgment. The only issue on appeal is whether defendant was entitled to a summary judgment as a matter of law. We answer yes and affirm.

The material facts are not in dispute. The controversy before us is what legal conclusions are to be drawn from the facts.

Plaintiff married Denis DeMello (Denis) in 1963. In 1972, Denis was employed by E.T. Ige Construction, Inc., whose principal owner was Edwin T. Ige (Ige), plaintiff's uncle. ETI Corporation (ETI) was organized to develop a subdivision called Kula Highlands on Maui. Denis and others were given an option to reserve a lot to be purchased at cost. Denis reserved Lot 29.

On August 7, 1975, a divorce decree was filed in a proceeding initiated by Denis against plaintiff. However, on or about September 4, 1975, plaintiff's attorney, James Krueger (Krueger), filed a motion to set aside the divorce decree.

On September 5, 1975, defendant opened two escrows for the sale and conveyance of Lot 29 from ETI[1] to Denis and from Denis to Mabel Cecilia Black (Black) based on two Deposit, Receipt, Offer and Acceptance contracts prepared by Joseph Kealoha (Kealoha), a real estate broker, with whom Denis had listed the property for sale.

On September 25, 1975, Krueger wrote to Ige stating that he represented plaintiff in a divorce proceeding in which the divorce settlement was being contested and the hearing was set for October 15, 1975. The letter further provided:

It is my understanding that Mr. DeMello is in the process of purchasing Lot 29, Kula Highlands. It is also my understanding that said lot is in the process of being re-sold in the near future.

This is to advise that should the sale of Lot 29, Kula Highlands be finalized on or before the scheduled hearing in Court, any proceeds from the sale due Denis DeMello should be held in escrow until such time as an agreement as to the property settlement can be decided by the Court, or by mutual agreement of the parties.

Krueger sent a copy of the letter to Kealoha.

On October 8, 1975, defendant received the executed deed conveying Lot 29 to grantee Denis, a single male. Also on October 8, 1975, Kealoha sent to Joyce R. Muromoto (Muromoto), defendant's escrow officer, a copy of Krueger's September 25th letter to Ige, which was received by her on October 10, 1975.

On October 14, 1975, Ruth Lin, real estate agent for Black, told Muromoto that since Krueger's letter was not a court order, it should be disregarded. On the same day, Kealoha told Muromoto over the telephone that the sale proceeds should be held in escrow pending the court's decision as to distribution. Muromoto consulted Donald B. Acohido (Acohido), defendant's vice-president and general manager, concerning the

---

[1] In his deposition, Joseph Kealoha testified that the sale of Lot 29 was from Kula Acres, Inc. to Denis DeMello. However, the records of defendant Home Escrow, Inc. indicate that the sale was from ETI Corporation or Kula Lands.

matter. Acohido informed her that since defendant had been put on notice, defendant had to either follow Krueger's request to Ige or obtain a letter at closing from Denis' attorney demanding release of the funds in escrow and stating that neither Ige nor plaintiff had any interest or claim in the funds and that defendant was released from all responsibility and liability.

On October 15, 1975, a hearing was held on plaintiff's motion to set aside the divorce decree.

On October 16, 1975, defendant received the escrow instructions dated September 9, 1975 executed by Denis and the attorney-in-fact for Black. The instructions provided, "[a]t close of escrow, Escrow Agent shall remit the balance remaining to the Seller by its check and deliver any documents to which either the Seller or the Buyer are entitled to the addresses below."

Subsequently, defendant received from Denis a one-page document, dated October 14, 1975 and designated "ADDTIONAL [sic] ESCROW INSTRUCTIONS," which stated in part:

> The balance of the sale proceeds is to be deposited in a regular savings account with Honolulu Federal Savings and Loan Association with Home Escrow, Inc., acting as trustee. Said funds are to be disbursed only upon written instructions executed by all interested parties or upon written evidence of the decision handed down by the Court or both.

On October 21, 1975, an order amending the divorce decree was filed. In essence, the order amended the child support provision and left matters of property division in abeyance for disposition at a later date.

The Denis-Black Lot 29 transaction was completed and the deed dated October 16, 1975 was recorded on October 29, 1975.

The net result of the ETI-Denis and Denis-Black transactions was the amount of $18,139.60 payable to Denis. Based on the additional escrow instructions, defendant, as trustee, deposited the funds in a Honolulu Federal Savings and Loan savings account.

On December 11, 1975, John T. Vail (Vail), Denis' attorney, sent a letter to defendant requesting that the funds held in

escrow be released to Denis. On December 16, 1975, Muromoto wrote to Vail referring to Denis' additional escrow instructions of October 14, 1975 and stated, "If your client will amend these instructions we would be happy to comply with your request."

By letter dated December 16, 1975 and addressed to Muromoto, Denis wrote:

> This letter is to inform you that I am revoking the origional [sic] escrow instructions dated October 14, 1975.
>
> At this time I am demanding release of all funds due me Immediately.
>
> If there is any questions [sic] concerning this matter please contact me.

Pursuant to the instruction in the December 16, 1975 letter, defendant sent a check for $18,270.48[2] to Denis.

From the time the escrows were opened with defendant on September 5, 1975 and until defendant sent the $18,270.48 check to Denis, neither plaintiff nor Krueger communicated directly with defendant. During the same time, defendant did not contact plaintiff or Krueger in any way. The only "communication" was a copy of Krueger's September 25, 1975 letter to Ige, which Kealoha sent to defendant.

On May 6, 1976, the Stipulated Order Amending Decree of Divorce and Amended Decree of Absolute Divorce was filed in the divorce proceeding. The order resolved the matter of property division between plaintiff and Denis. However, the order was silent as to Lot 29 and the profit derived from its sale. Within a month after the filing of the order, Denis died.

By a complaint filed on October 28, 1977, plaintiff sought to recover the amount defendant disbursed to Denis and other damages. On January 12, 1981, the trial court entered its order granting defendant's motion for summary judgment and denying plaintiff's cross-motion for summary judgment, from which plaintiff has appealed.

---

[2] This amount included the interest earned in the savings account.

Plaintiff's. complaint alleges negligent conduct on the part of defendant and is grounded in tort. "A fundamental requirement of a negligence action is the existence of a duty owed by the defendant to the plaintiff." *Namauu v. City & County,* 62 Haw. 358, 361, 614 P.2d 943, 945 (1980). *See also First Insurance Company of Hawaii, Ltd. v. International Harvester Company,* 66 Haw. ___ (No. 6786, February 15, 1983); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980); *Seibel v. City & County,* 61 Haw. 253, 602 P.2d 532 (1979). Thus, the pivotal question in this case is whether based on the facts defendant owed any duty to plaintiff.

I.

Plaintiff contends that (1) defendant is an escrow depository[3] under Hawaii Revised Statutes (HRS) ch. 449 (1976);[4] (2) an escrow depository is a trustee; and (3) as an escrow depository, defendant owed a duty of care to plaintiff which it breached.

In HRS § 449-1 (1976), the terms "escrow" and "escrow depository" are defined as follows:

(3) "Escrow" means any transaction affecting the title to real property, including leaseholds, proprietary leaseholds, and condominiums, in which a person not a party to the transaction and neither having nor acquiring any interest in the title receives from one party to the transaction, holds until the happening of an event or performance of a condition and then delivers to another party to the transaction, any money or other consideration or any instrument affecting the title to that real property, *all in accordance with the terms of the agreement between the parties to the transaction.* [Emphasis added.]

---

[3] The terms "escrow depository," "escrow depositary," "escrowee," "escrow holder," and "escrow agent" have been used synonymously in treatises and court opinions.

[4] Hawaii Revised Statutes ch. 449 (1976) applies only to escrow transactions involving real property.

(4) "Escrow depository" means the person who, in an escrow, and for compensation, receives, holds, and delivers the money, other consideration, or instrument affecting title to property.

The statute then states that an escrow depository "shall have the responsibility of a trustee for all moneys, other consideration, or instruments received by it." HRS § 449-16 (1976). Clearly, the law imposes on an escrow depository a certain fiduciary duty. But the question is to whom is such duty owed?

The clear language of the statute indicates that such duty is owed only to the parties to the escrow transaction. The statutory definition of "escrow" specifically limits the depository's function to acts performed "in accordance with the terms of the agreement between the parties to the transaction." Legislative history supports this view. The legislators sought to license and regulate those setting themselves up "in an escrow business handling substantial sums of money and assuming a large measure of *fiduciary responsibility to the parties to real property transactions.*" Senate Stand. Comm. Rep. No. 599, 4th Hawaii Leg., Gen. Sess., *reprinted in* Senate Journal 1118 (1967) (emphasis added).

In this case, the parties to the escrow transaction were Denis, Black and defendant. Plaintiff was not a signatory to the escrow instructions. Consequently, as a statutory escrow depository, defendant owed no fiduciary duty to plaintiff.

The general rule is that an escrow depository occupies a fiduciary relationship with the parties to the escrow agreement or instructions and must comply strictly with the provisions of such agreement or instructions. *See* 30A C.J.S. *Escrows* § 8 (1965); *Woodworth v. Redwood Empire Savings & Loan Ass'n,* 22 Cal. App. 3d 347, 99 Cal. Rptr. 373 (1971); *Union Title Company v. Burr,* 102 Ariz. 421, 432 P.2d 433 (1967).

Applying the foregoing principle to the facts in this case, we find that defendant adhered strictly to the escrow instructions, as amended or supplemented by Denis, and properly disbursed the funds in escrow to him.

## II.

Relying on *Markel v. Transamerica Title Insurance Co.,* 103 Ariz. 353, 442 P.2d 97 (1968), *cert. denied,* 393 U.S. 999, 89 S. Ct. 484, 21 L.Ed.2d 463 (1968), plaintiff claims that defendant was a constructive trustee as to the funds in escrow and that defendant breached its fiduciary duty to her when it disbursed such funds to Denis. We do not find *Markel* to be applicable.

Traditionally, a constructive trust may be defined as a device utilized by equity "to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 471, at 3 (rev. 2d ed. 1978). A constructive trust arises where there is a confidential relationship between the transferor and the transferee, and the former relies upon the latter's promise to reconvey the property. *Lee v. Wong,* 57 Haw. 137, 552 P.2d 635 (1976); *Fairfield v. Medeiros,* 50 Haw. 73, 431 P.2d 296 (1967). Such trust also may arise in favor of the person whose money was wrongfully acquired and used. *Peine v. Murphy,* 46 Haw. 233, 377 P.2d 708 (1962). The policy basis of a constructive trust is to prevent the holder of the property from being unjustly enriched due to fraud, duress or other unconscionable conduct. 76 Am. Jur. 2d *Trusts* §§ 221, 222 (1975).

In *Markel,* the divorce decree had given the ex-wife a one-half interest in any proceeds resulting from the sale of certain land located in Arizona. The husband remarried and his second wife became the owner of the land. The second wife subsequently sold the land and the transaction was handled through an escrow and trust by the title company. Upon learning of the sale, the ex-wife sued the second wife and the title company on the theory that half of the proceeds belonged to her. Despite the ongoing lawsuit, the title company disbursed the proceeds to the second wife. The Arizona Supreme Court acknowledged that the title company was innocent of any fraud and the disbursement was done in good faith. However, it reasoned that since there was a constructive trust based on the second wife's fraud, the title company holding the sale proceeds encumbered by such a constructive trust *"with*

*knowledge of the facts,* must of necessity be a constructive trustee." *Markel, supra,* 103 Ariz. at 359, 442 P.2d at 103 (emphasis added).

In *Markel,* the court stressed the fact that the title company had direct knowledge of the ex-wife's claim and held that it "was a constructive trustee from the time that it was served with notice of [the] action." *Markel, supra,* 103 Ariz. at 360, 442 P.2d at 104. When named a party defendant in the lawsuit, it still held undisbursed sale proceeds in escrow. In the instant case, however, defendant received only indirect notice of plaintiff's possible interest in Lot 29 and when plaintiff did sue defendant, defendant no longer had any funds in escrow.

We further find that *Markel* is inapposite since plaintiff here never established a direct interest in the funds in escrow. *Amtitle Trust Company v. Fitch,* 25 Ariz. App. 182, 541 P.2d 1166 (1975). In *Markel,* the ex-wife had established her right to one-half of the proceeds by virtue of the divorce decree. Here, at the time of disbursement of the escrow funds to Denis, there was no divorce decree or order establishing plaintiff's right to any part of Lot 29 or the profits from its sale. In fact, as discussed below, plaintiff had absolutely no right or interest in Lot 29.

For the foregoing reasons, the *Markel* principle of constructive trust is not applicable in our case.

### III.

Plaintiff further contends that Denis' letter of October 14, 1975 to defendant created an express irrevocable trust for her benefit, which defendant breached. We hold that Denis did not create any irrevocable trust as a matter of law.

The October 14, 1975 letter was entitled "ADDTIONAL [sic] ESCROW INSTRUCTIONS." It instructed defendant to deposit the sale proceeds balance in a trusteed savings account "to be disbursed only upon written instructions executed by all interested parties or upon written evidence of the decision handed down by the Court or both."

"A trust is created only if the settlor properly manifests an intention to create a trust." Restatement (Second) of Trusts § 23 (1959). Such intent "must be definite and particular." G.G.

Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 46, at 323 (2d ed. 1965).

The undisputed facts clearly indicate that Denis had no intention of creating an express irrevocable trust. He designated the October 14, 1975 communication as "ADDTIONAL [sic] ESCROW INSTRUCTIONS" and considered it to be such. This fact is confirmed when in his letter of December 16, 1975, he informed defendant that he was "revoking the . . . escrow instructions dated October 14, 1975," and instructed it to release "all funds due [him] Immediately."

The October 14, 1975 letter was nothing but additional escrow instructions and cannot be construed as a trust instrument.

## IV.

Finally, plaintiff argues that (1) defendant knew that the matter of property division between plaintiff and Denis was pending in the divorce proceeding; (2) until entry of a property division order, HRS § 580-56(b) (1976) preserved to plaintiff her rights in Lot 29, and then in the sale proceeds which defendant held in escrow; (3) Denis' escrow instruction of December 16, 1975 contravened HRS § 580-56(b); and (4) it was against public policy for defendant to follow such escrow instruction. Plaintiff misreads HRS § 580-56(b).

Section 580-56(b) provides in pertinent part:

Following the entry of a decree of divorce in any matrimonial action in which the final division of the property of the parties to such action is reserved for further hearings, decisions, and orders, each party to such action *shall continue* to have *all of the rights to and interests in the property of the other party* to such action *as provided by chapter 533* to the same extent he or she would have had such rights or interests if the decree of divorce had not been entered, until the entry of a decree or order finally dividing the property of the parties to such matrimonial action, . . . . [Emphasis added.]

Under HRS § 580-56(b), the rights and interests which a spouse will continue to have in the property of the other spouse are those rights and interests under HRS ch. 533. Chapter 533

deals with dower and curtesy.[5] Since during the life of the wife the husband has no curtesy right, inchoate or otherwise (HRS § 533-16 (1976)), HRS § 580-56(b) applies to dower right only. The purpose of HRS § 580-56(b) was to preserve a wife's dower right, since a divorce barred dower. HRS § 533-9 (1976). *See Collins v. Ako,* 35 Haw. 440 (1940).

On August 7, 1975, the date of entry of the divorce decree,[6] Denis was not the owner of Lot 29. He merely had a reservation to buy Lot 29. Therefore, plaintiff had no inchoate dower right in Lot 29. There was no right or interest in Lot 29 which HRS § 580-56(b) preserved for plaintiff. Plaintiff's public policy argument is meaningless.

Affirmed.

*James Krueger* for plaintiff-appellant.

*Richard R. Clifton* (*William M. Swope* also on the brief; *Cades Schutte Fleming & Wright,* of counsel) for defendant-appellee.

---

[5] Act 200, 1976 Hawaii Sess. Laws 372, eliminated dower and curtesy effective July 1, 1977, but preserved all rights which accrued under case and statutory law relating to dower and curtesy which vested prior to such date. The rights of a surviving spouse after June 30, 1977 are governed by the Uniform Probate Code, HRS ch. 560; primarily art. II, pts. 2, 3 and 4.

[6] Although Denis obtained title to Lot 29 while plaintiff's motion to set aside the divorce decree was pending, the order amending the divorce decree filed on October 21, 1975, did not change the date of the divorce.