570 P.2d 491

MINNESOTA TITLE COMPANY, an
Arizona Corporation, Appellant,

v.

CONGRESS INDUSTRIES, INC., an
Arizona Corporation, and Lester
Tausz, Appellees.

No. 12688.

Supreme Court of Arizona,
In Division.

Oct. 3, 1977.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Wilbert G. Anderson, Phoenix, for appellant.

Berry & Herrick by Richard S. Berry, Tempe, for appellees.

HOLOHAN, Justice.

Appellant Minnesota Title Company has appealed the granting of summary judgment against it in the amount of $10,228 plus costs. While there were other claims for relief pending against the appellant title company arising out of the action by appellees, Congress Industries, Inc. and others against it, the trial court found that there was no just reason for delay and directed the entry of judgment on the claim at issue in this appeal pursuant to Rule 54(b), Rules of Civil Procedure 16 A.R.S. We assumed jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court 17A A.R.S.

The claim for relief at issue arose out of the allegation by appellees that the appellant title company, as trustee in certain subdivision trusts, misapplied funds entrusted to it to appellees' damage. The appellant admitted receipt of the funds but denied misapplication. Motions for summary judgment, supported by additional facts, were filed by both parties. As noted, the trial court granted the motion of appellees with the resulting judgment.

The facts are not in dispute, but they involve a series of subdivision trusts with amendments and assignments of interest which require a detailing in order to understand the final transaction which forms the basis for the claim in this case. There are three trusts which are material to the case: Trust No. 902; Trust No. 1216; and Trust No. 1266. Appellant is trustee in each of the foregoing trusts.

On January 15, 1973 Trust Agreement No. 902 was entered into between Remco Investment Co. as seller and as the first beneficiary, and Mr. J. D. Ward and Mr. and Mrs. B. G. Wharton as the buyers and as second beneficiaries. Under the terms of the agreement Mr. Ward and the Whartons agreed to purchase Remco's entire interest for $235,000. One provision of Trust No.

902 allowed for the release of each lot from the trust upon payment to Minnesota Title as trustee of $3,164 per lot. Another provision permitted subjecting the trust property to a mortgage lien for "off-site improvements" for up to $1,000 per lot. Trust No. 902 was amended to allow the mortgaging of each lot for $1,950. As a result of the amendment to Trust No. 902, each lot could be subjected to a mortgage lien for $1,950. Pursuant to this subordination provision Mr. Ward and the Whartons mortgaged the lots to Greater Arizona Savings and Loan Association for the maximum amount of $1,950 per lot.

On December 28, 1973 Mr. Ward and the Whartons entered into a Trust Agreement, No. 1216, which was made a junior trust to Trust No. 902. By the terms of this junior trust Mr. Ward and the Whartons, as sellers and as first beneficiaries, transferred their interest in all but seven of the lots which were the trust *res* of Trust No. 902 to Congress Industries, as purchaser and as the second beneficiary, for the sum of $490,-000. The provisions of Trust No. 1216 stated that the obligations of the existing Trust No. 902 and the mortgage release payments owed to the mortgagee savings and loan association were to remain the obligation of Mr. Ward and the Whartons. The second beneficiaries reserved the right to pay amounts due on the Senior Trust 902 and have such payments applied to the payments due under Trust No. 1216. Minnesota Title was instructed to use the installment payments due under Trust No. 1216 as regular installments on the first beneficiary's obligations in Trust No. 902 and the mortgage payments due to Greater Arizona Savings. Trust No. 1216 was amended on March 27, 1974 to provide that Congress Industries assume the mortgage payable to Greater Arizona Savings for $113,050 and also assumed the first beneficiary's balance due under Trust No. 902 of $181,836.

Of the remaining seven lots in Trust No. 902, which were not part of Trust No. 1216, four were disposed of in a manner extraneous to this appeal, and the other three lots were sold by Ward and the Whartons to three couples, the Edwardses, Reeders, and Folletts on January 17, 1974. These lots were transferred by a "Deed and Assignment of Interests" which stated that the transfer remained subject to the Remco and Greater Arizona Savings liens. In a separate oral agreement Mr. Ward and the Whartons stated that those liens would remain their obligations.

On April 15, 1974 Congress Industries purchased the lots from the three couples under Trust No. 1266 which also was made a junior trust to Trust No. 902. Pursuant to the terms of this new junior trust each of the lots was subjected to a release price of $7,000. The three couples were named as first beneficiaries and Congress Industries was named as the second beneficiary. Trust No. 1266 also provided that the obligations of the Senior Trust No. 902 remained the obligation of all three couples as first beneficiaries of Trust No. 1266 and that any payments by Congress Industries to cure defaults on the senior trust were to be applied to its balance due under Trust No. 1266.

Contemporaneous with the transfer provided for in Trust No. 1266, Congress Industries arranged to sell 21 lots to the United States Bureau of Reclamation for use in the Central Arizona Project. Nineteen of these lots came from Trust No. 1216 and the two lots held by the Reeders and Edwardses came from Trust No. 1266. The sales agreement required that title to the lots be transferred free and clear of encumbrances.

Minnesota Title was instructed by Congress Industries to effect the sale to the government and comply with the terms of the sales agreement. At the time of the government sale Minnesota Title, as trustee in Trusts No. 902, 1216 and 1266, had to pay off the two lot release prices of $3,164 and $1,950 per lot in order to convey good title to the government. By the time the government contract was consummated, Congress Industries was in default to Remco for monies which had not been paid to it as the holder of the first beneficial interest in Trust No. 902.

Transamerica Title Insurance Company acted as escrow agent for the sale of the 21 lots to the United States. Upon receipt from the government of the $387,000 sale price, Transamerica Title deducted from the gross proceeds $40,950 to pay off the Greater Arizona Savings lien on the 21 lots and remitted the remainder to Minnesota Title.

On May 6, 1974, Minnesota Title received a set of instructions from Congress Industries about disbursing the net proceeds of the sale. The disbursements were to be made to certain parties and in a specified order. On May 17, 1974, Minnesota Title received the proceeds, paid off the Remco liens and commenced the disbursement.

On May 21, 1974, Minnesota Title discovered that it had failed to pay the release price due on Trust No. 1266 before disbursing the net proceeds. It then stopped payment on the disbursement checks which it had issued and paid the Reeder and Edwards interests $14,098.96.

The stop payment order reached only three of the fourteen checks which had been issued, including a check payable to Fort Wayne Mortgage Co. Fort Wayne Mortgage Co. was the servicing agent for a mortgage which Congress Industries had placed on a building. When Fort Wayne Mortgage Co. learned of the stop payment, it foreclosed. *See Congress Industries, Inc. v. Federal Life Insurance Company (Mutual), 114 Ariz. 361, 560 P.2d 1268 (1977).*

Congress Industries protested the stop payment order and subsequent payment of $14,098.96 for two reasons. First, it claimed that the Remco and Greater Arizona Savings liens had remained the responsibility of Reeder and Edwards.

Second, it pointed out that Transamerica Title had paid off the Greater Arizona Savings liens before turning the balance over to Minnesota Title, and that Minnesota Title had paid off the Remco obligation (Trust No. 902) before disbursing the net proceeds. From this, Congress Industries concluded that by not deducting the Remco and Greater Arizona Savings lot release prices

from the amount paid to Reeder and Edwards to release the two lots from Trust No. 1266, Minnesota Title had forced Congress Industries to make 23 lot release payments to release 21 lots.

The appellant and appellees disagree about the rights and obligations of the parties to the various trust agreements as well as about the duties owed by Minnesota Title in apportioning the proceeds of the government sale. However, we find one issue to be dispositive of this appeal:

Did Minnesota Title owe Congress Industries a duty to deduct the amount of the Remco and Greater Arizona Savings liens (which it had already paid off) from the price paid to release lots 24 and 33 from Trust No. 1266?

Arizona law requires the trustee to follow the instructions of the trust instrument. *Valley National Bank v. Hartford Accident and Indemnity Company,* 60 Ariz. 286, 136 P.2d 458 (1943); *Matter of Estate of Charouleau,* 25 Ariz.App. 507, 544 P.2d 1108 (1976). Minnesota Title maintains that by paying the full $7,000 plus interest per lot, it fulfilled its duty.

However, the transaction with the Bureau of Reclamation involved not just one but three separate trusts, all administered by Minnesota Title. Nineteen of the lots were subject to Trust No. 1216 and two of the lots were subject to Trust No. 1266; but all 21 lots were subject to Trust No. 902 to which the other two trusts had been made junior and subordinate. Lots 24 and 33 in Trust No. 1266 were originally part of Trust No. 902 and subject to a lot release price of $3,164 per lot, payable to Remco. Ward and Wharton mortgaged all the lots they had obtained through Trust No. 902 to Greater Arizona Savings with a lot release price of $1,950 per lot.

Having obligated each lot for a total of $5,114, Ward and Wharton transferred Lots 24, 33 and 39 * by means of a document entitled "Deed and Assignment of Interest." By terms of that document, the transfer was made subject to the Remco and Greater Arizona Savings liens.

* Lot 39 was part of Trust No. 1266, but it was not purchased by the Bureau of Reclamation.

Congress Industries then purchased this interest in the three lots under a subdivision trust, No. 1266. The lot release price for this trust was $7,000 plus interest, per lot. However, Paragraph V of that document stated, in part:

"It is specifically understood and agreed that this Trust is subject to that certain Senior Trust No. 902, MINNESOTA TITLE COMPANY records, which said Senior Trust remains the obligation of the within named First Beneficiary. It is further understood and agreed that any default in said Senior Trust is a default under this Trust and the within named Second Beneficiary may cure any breach or default in said Senior Trust. Any funds paid by the within named Second Beneficiary to cure any such breach or default in said Senior Trust shall be credited against the balance due pursuant to this Junior Lien Trust."

When Congress Industries instructed Minnesota Title to make the sale to the Bureau of Reclamation and to do everything necessary to comply with the terms of the sales agreement which required transfer of title free and clear of encumbrances, it required Minnesota Title to perform the duties of the trustee under all three trusts. Paragraph V of Trust No. 1266 required that Minnesota Title pay the obligations due on the senior Trust No. 902. The mortgage on the lots in question had been paid by Transamerica, so the only amount necessary to be paid was the $3,164 per lot release price. After the obligation under Trust No. 902 had been satisfied, the amounts paid to cure the breach on the senior trust were to be credited against the balance due on the junior trust. Credits for the payment on Trust No. 902 should have been given on the lot release price for the two lots in Trust No. 1266.

The trustee did not follow the directions of the beneficiary, and it paid too much into Trust No. 1266. By its action the trustee damaged Congress Industries by its misapplication of funds. The judgment of the trial court was correct, and it is affirmed.

STRUCKMEYER, V. C. J., and HAYS, J., concur.