697 P.2d 698

**BURCH & CRACCHIOLO, P.A. and D'Antonio & D'Antonio, Plaintiffs-Appellees,**

v.

**Albino PUGLIANI and Lenora Pugliani, husband and wife; Theron A. Miller, Defendants-Appellants,**

and

**Stewart Title & Trust of Tucson, an Arizona corporation, Defendant-Appellant.**

Nos. 1 CA–CIV 5908, 1 CA–CIV 6245.

Court of Appeals of Arizona, Division 1, Department B.

April 12, 1984.

Burch & Cracchiolo, P.A. by Jack Daniel Klausner, Bryan F. Murphy, Phoenix, for plaintiff-appellee Burch & Cracchiolo, P.A.

D'Antonio & D'Antonio, P.C. by Gregory D. D'Antonio, Patricia A. Ihnat, Tucson, for plaintiff-appellee D'Antonio & D'Antonio.

Law Office of Joel Sacks by Joel Sacks, Carl D. Lee, Phoenix, for defendants-appellants Miller and Pugliani.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by John F. Molloy, Daniel F. Davis, Tucson, for defendant-appellant Stewart Title & Trust.

GRANT, Judge.

This appeal arises out of a breach of contract action directed principally at obtaining for Burch & Cracchiolo, P.A. (Cracchiolo) and D'Antonio & D'Antonio (D'Antonio), plaintiffs-appellees, attorneys' fees for services performed for Albino Pugliani and Theron Miller, defendants-appellants. Appellees claimed a beneficial interest in the proceeds held at one time by Stewart Title & Trust (Stewart) in Trust no. 1905, and ultimately sought monetary damages from Stewart for wrongful disbursement of those funds. The trial court granted motions for summary judgment in favor of Cracchiolo and D'Antonio, and against Pugliani, Miller and Stewart.

This consolidated appeal raises two issues:

(1) Did the lower court improperly grant summary judgment that Cracchiolo and D'Antonio were each entitled to 25% of the proceeds from the sale of the Pantano property pursuant to an agreement for attorneys' fees with Pugliani and Miller?

(2) Did the lower court improperly grant summary judgment that Stewart, as constructive trustee, wrongfully disbursed all of the trust proceeds from the sale of the Pantano property to Pugliani and Miller after the commencement of this action?

The relevant facts are: in 1973 Theron Miller and Albino Pugliani purchased for $10,000 the beneficial interest in a 28 acre parcel of real property known as the Pantano property. Stewart Title & Trust, Trust no. 0891, held legal title to the property at the time of purchase. Also, a suit to foreclose a mortgage on the property and to appoint a receiver had been filed against the property by American Savings & Loan Association (American Savings).

Pugliani and Miller retained the law firm of D'Antonio & D'Antonio to contest the American Savings action. D'Antonio ultimately agreed to accept a contingent fee for its services. In 1974, D'Antonio retained the law firm of Burch & Cracchiolo to assist with the American Savings litigation. D'Antonio and Cracchiolo were to receive a contingent fee totaling 50%.

Thereafter, D'Antonio, Cracchiolo, Miller, and Pugliani each received 25% of the rental income from the Pantano property. In response to Cracchiolo's request for additional payments, D'Antonio instructed Miller to forward all rental income checks to Cracchiolo for distribution. Subsequently, pursuant to an interim agreement Cracchiolo received one-third of the total rental income, and D'Antonio, Miller, and Pugliani equally split the remainder. On January 11, 1977 Miller, the sole beneficiary of record in Trust no. 0891, executed written assignments of 25% beneficial interests in Trust no. 0891 to Pugliani, Lawrence P. D'Antonio, and Daniel Cracchiolo. D'Antonio and Cracchiolo did not record their assignments of beneficial interest. By the time of the instant proceedings in the trial court these documents had been misplaced.

D'Antonio and Cracchiolo continued to receive shares of the Pantano rental income until July, 1978, when settlement of the American Savings action was imminent. A settlement was ultimately reached whereby Pugliani and Miller paid $112,000 to American Savings and thereby obtained title to 11 undeveloped acres. Miller unsuccessfully sought contribution from D'Antonio and Cracchiolo toward the $112,000 settlement payment. Cracchiolo claimed that they did not participate in

these ultimate settlement negotiations—that Miller and Pugliani negotiated directly with American Savings.

In January, 1979, Miller and Pugliani transferred the corpus of Trust no. 0891 into Stewart Trust no. 1905. In June of 1979 Miller and Pugliani sold all 11 acres to a third party buyer for $325,000; of this, $144,423.57 was paid in cash and a promissory note for $175,000 plus interest was executed. Miller and Pugliani divided the cash payment as follows: $112,000 plus interest to Miller and Pugliani to recoup their settlement payment with American Savings and the remainder of $25,876.08 equally to Miller, Pugliani, D'Antonio, and Cracchiolo ($6,469.02 each).

When this fact became known, D'Antonio requested that Miller and Pugliani execute assignments of beneficial interest in Trust no. 1905. They, however, refused and on May 9, 1980, Cracchiolo filed suit against D'Antonio, Miller, Pugliani, and Stewart.

Cracchiolo originally sought specific enforcement of its alleged 25% interest in the res of Trust no. 1905. Miller and Pugliani answered denying any interest of Cracchiolo in the res. D'Antonio answered and cross-claimed against Miller, Pugliani, and Stewart to specifically enforce its alleged 25% beneficial interest in the res of Trust no. 1905. Upon motion, D'Antonio was re-aligned as a party plaintiff. After discovery, the trial court, by a minute entry dated on February 6, 1981, granted D'Antonio's and Cracchiolo's motions for summary judgment, and denied similar motions by Miller and Pugliani. Prior to the filing and publication of the February 6 minute entry, however, Pugliani and Miller arranged for the acceleration of the promissory note payable into Trust no. 1905. On February 9, 1981, Stewart, upon demand by Miller and Pugliani and pursuant to its trust agreement, distributed all proceeds to Miller and Pugliani. Upon learning of this D'Antonio and Cracchiolo both successfully moved to amend their complaints to abandon the request for specific performance and to seek money damages from Miller and Pugliani, under an oral contract, and

from Stewart equal to 25% of the proceeds released from Trust no. 1905.

On March 16, 1981, the trial court entered judgment pursuant to rule 54(b) in favor of Cracchiolo and D'Antonio and against Miller and Pugliani. Cracchiolo was awarded $47,193.38 plus $9,000 for attorneys' fees and $1,203.07 for costs. D'Antonio was awarded $47,193.38 plus $6,000 for attorneys' fees and $308.75 for costs. Miller and Pugliani appeal from this judgment (1 CA–CIV 5908).

On August 26, 1981, the trial court entered summary judgment on the amended complaint in favor of Cracchiolo and D'Antonio, and against Stewart. Cracchiolo was awarded $57,396.45 plus $2,355 for attorneys' fees and $122.23 for costs. D'Antonio was awarded $53,502.13 plus $2,500 for attorneys' fees and $25.50 for costs. Stewart appeals from this judgment (1 CA–CIV 6245).

## I. MILLER AND PUGLIANI APPEAL

Miller and Pugliani (appellants) contend that the lower court improperly granted summary judgment that D'Antonio and Cracchiolo (appellees) were each entitled to 25% of the proceeds of Trust no. 1905 as attorneys' fees for services rendered in the American Savings action. Appellants advance three theories to support their position: (1) a genuine dispute exists regarding the terms of the contingent fee contract between appellants and appellees; (2) a genuine dispute exists as to whether the execution of the assignments of beneficial interests in Trust no. 0891 to appellees transferred any beneficial rights; and (3) appellees are not entitled to recover the amount claimed, since recovery by appellees would constitute an unconscionable fee or would unlawfully result from duress.

On appeal this court's duty is to determine whether any material factual issues are in dispute, and, if not, whether the lower court correctly applied the substantive law to the undisputed facts. *Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557 (App. 1981). This court must review the entire

record in fulfilling this duty. *Morrell v. St. Luke's Medical Center*, 27 Ariz.App. 486, 556 P.2d 334 (1976). In reviewing the record we must consider the facts in the light most favorable to the non-moving party. *Portonova v. Wilkinson*, 128 Ariz. 501, 627 P.2d 232 (1981). Such party is also entitled to benefit from all favorable inferences which may reasonably be drawn from the evidence. *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979). Thus, where there is the slightest doubt as to the existence of a material factual dispute, such doubt should be resolved in favor of a trial on the merits. *Hegel v. O'Malley Insurance Co.*, 122 Ariz. 52, 593 P.2d 275 (1979).

■ A review of the entire record in this case reveals that reasonable people could reach different conclusions as to whether or not Miller and Pugliani agreed to pay both D'Antonio and Cracchiolo 25% of the proceeds from the sale of the property held in Trust no. 0891. *See Tribe v. Shell Oil Co.*, 133 Ariz. 517, 652 P.2d 1040 (1982). The depositions of Miller and Pugliani reveal that they agreed to a contingent fee based not on the proceeds, but on the rental income from such property. Miller testified that he executed the assignments of beneficial interest to D'Antonio and Cracchiolo only to serve as collateral. Such evidence directly raises a factual dispute of a material issue.

■ Reasonable inferences also arise to support the conclusion that appellees were not to receive 25% beneficial interests in Trust no. 0891. Reasonable minds could conclude that the following facts are inconsistent with the creation of beneficial interests for D'Antonio and Cracchiolo in Trust no. 0891: the refusal of D'Antonio and Cracchiolo to contribute to the cash settlement in the American Savings action; the total amount of the fees already paid in relation to the fair market value of the 11 undeveloped acres retained by Miller and Pugliani; and the failure of experienced attorneys not to record their purported assignments of beneficial interest.

■ Admittedly, appellees also presented evidence which supports their theory that they are entitled to 50% of the proceeds. However, this court does not weigh the evidence, but only determines if material facts are in dispute. *See Mobile Home Estates, Inc. v. Levitt Mobile Home Systems*, 118 Ariz. 219, 575 P.2d 1245 (1978).

For the foregoing reasons the lower court's decision granting summary judgment in favor of D'Antonio and Cracchiolo, and against Miller and Pugliani, must be reversed and the case remanded to proceed to trial.

## II. STEWART TITLE & TRUST APPEAL

■ Since appellees failed to establish any interest in Trust no. 1905 as a matter of law, the decision of the lower court granting summary judgment in favor of D'Antonio and Cracchiolo, and against Stewart, must also be reversed. In order to decide whether the matter is to be remanded for trial we must consider the arguments advanced by Stewart on appeal. If D'Antonio and Cracchiolo can prove that Miller and Pugliani were constructive trustees with respect to the proceeds of Trust no. 1905, can Stewart Title and Trust be held liable for wrongful distribution of trust proceeds under the authority of *Markel v. Transamerica Title Insurance Co.*, 103 Ariz. 353, 442 P.2d 97, *cert. denied sub nom. Phoenix Title & Trust Co. v. Markel*, 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968)?

In *Markel* the Arizona Supreme Court held an escrow holder liable to the plaintiff for disbursing the proceeds from the sale of trust property after the escrow holder had knowledge of plaintiff's claim of a constructive trust. 103 Ariz. at 361, 442 P.2d at 105. The plaintiff, Edna Markel, obtained a divorce decree in 1939 which obligated her ex-husband, Earl Van-Y, to give the plaintiff one-half interest in any funds obtained from the sale of a parcel of real estate. Subsequently the property passed to Virginia Van-Y, Earl Van-Y's wife.

310

In 1957, Virginia Van-Y sold the parcel for $25,000, with Transamerica Title & Trust Company serving as escrow holder and trustee. On April 30, 1959, after learning of the sale, plaintiff brought an action against Virginia Van-Y and Transamerica. After Transamerica defaulted the court issued an injunction enjoining Transamerica from making any distributions to Virginia Van-Y. Thereafter, the default and the injunction were set aside. Transamerica then made payments to Virginia Van-Y totaling $8,616.57. After a hearing on the merits, the lower court entered judgment in favor of the defendants. During the pendency of the appeal from this judgment Transamerica made further disbursements. Ultimately the Arizona Supreme Court in 1966 reversed the decision of the lower court, holding that the plaintiff had made out a prima facie case for the imposition of a constructive trust. *Markel v. Phoenix Title & Trust Co.*, 100 Ariz. 53, 410 P.2d 662 (1966). Plaintiff then successfully moved to amend her complaint to allege, in addition to facts set out in the original complaint, that Transamerica fraudulently distributed funds to Virginia Van-Y.

The trial court in *Markel* granted summary judgment in favor of Transamerica on the amended complaint and the Court of Appeals affirmed. 6 Ariz.App. 585, 435 P.2d 714 (1968). The Supreme Court, however, held that:

[T]he disbursement of the proceeds of the sale of the property by Transamerica to Virginia, even though made in the utmost good faith, and pursuant to a written agreement, was—after it had knowledge of plaintiff's claim of a constructive trust—both a breach of its duty as trustee, and a conversion of such funds.

103 Ariz. at 361, 442 P.2d at 105.

Stewart Title & Trust seeks to distinguish the decision in *Markel* on the following grounds: (1) *Markel* involved allegations of fraud by Transamerica, while there is no such allegation here; (2) the contractual provisions here obligated Stewart to pay Miller and Pugliani upon their demand,

while it is unclear what the contract involved in *Markel* required; (3) the plaintiffs here did not pursue other means or remedies available to them; (4) there is no trust res here since all monies were distributed; (5) the plaintiff in *Markel* sued based on vested rights established by a court decree, while here plaintiffs merely have a breach of contract claim; and (6) the complaint in *Markel* specifically referred to imposing a constructive trust, while no such reference is made in the complaint here.

The absence of an allegation of fraud on Stewart's behalf is clearly not determinative. The *Markel* court stated:

We can, at the outset, disregard any claims of *fraud* on the part of Transamerica.

\* \* \* \* \* \*

But, if the proceeds are encumbered by a constructive trust, the person holding them, with knowledge of the facts, must of necessity be a constructive trustee.

103 Ariz. at 359, 442 P.2d at 103 (emphasis in original). The court pointed out that the wrongdoing by the defendant in *Markel* was solely in distributing the trust funds with direct knowledge of an adverse claim by the plaintiff. 103 Ariz. at 360, 442 P.2d at 104. *Cf. DeMello v. Home Escrow, Inc.*, 659 P.2d 759 (Hawaii Ct.App.1983) (defendant only had indirect notice of pending claim in separate divorce action wherein defendant not a party). The same situation is involved here. Stewart is a party-defendant with the knowledge of all the evidence and pleadings. Stewart, with such knowledge, committed a wrong if it is determined that Miller and Pugliani were constructive trustees.

The opinion in *Markel* does not reveal the substance of the contract between Van-Y and Transamerica. Stewart claims that the contract with Pugliani and Miller required the distributions complained of. However, the *Markel* court made it quite clear that Transamerica was liable for the disbursements, "even though made in the utmost good faith, and pursuant to a writ-

ten agreement." 103 Ariz. at 361, 442 P.2d at 105.

Stewart next argues that the plaintiffs here should have pursued alternative forms of remedies. A similar argument was made and rejected in *Markel*. 103 Ariz. at 361–63, 442 P.2d at 103–05.

 Stewart seeks to escape liability because there is no longer any trust res. This argument is premised on the decision in *Amtitle Trust Co. v. Fitch*, 25 Ariz.App. 182, 541 P.2d 1166 (1975). In *Amtitle* the court held that the escrow holder was not a constructive trustee because:

> Her claim against them is therefore nothing more than an offshoot of her general claim for damages against Heath and his corporation. The failure of Fitch to demonstrate that it was *her* money which passed through the hands of the title companies must therefore defeat her claim for a constructive trust against the title companies.

25 Ariz.App. at 185, 541 P.2d at 1169 (emphasis in original). Unlike the situation in *Amtitle*, D'Antonio and Cracchiolo claimed a specific and traceable interest in Trust no. 1905. Therefore, as the court in *Markel* stated:

> We hold, therefore, that in the instant case Transamerica was a constructive trustee from the time that it was served with notice of this action; that, though innocent of any fraud, its duty as constructive trustee was to hold all money that came into its hands under trust No. 2197 until the final disposition of this case; and that the turning over of the money to Virginia was a breach of its duty to plaintiff, and was therefore wrongful.

103 Ariz. 360, 442 P.2d at 104.

 Stewart's fifth argument seeks to distinguish between suits based on rights established by court decrees and those not so established. The Hawaii Court of Appeals in *DeMello v. Home Escrow, Inc.* appears to support such a distinction. In *DeMello* the plaintiff's ex-husband owned a parcel of land which was in the process of being sold through a trust with Home Escrow. Prior to any property settlement in the separate divorce action, Home Escrow received a copy of a letter from the wife's attorney to a third party advising the third party that any proceeds from the sale of the property in question should be held in escrow until culmination of the divorce action. Nevertheless, the escrow holder disbursed proceeds to the husband. The wife then brought suit against the escrow holder.

In distinguishing *Markel* the court held that the wife never established a direct interest in the funds in escrow and cited *Amtitle*, 659 P.2d at 764. The *DeMello* court stressed that, unlike in *Markel*, there was no court order or decree. *Id.* This emphasis, however, deals not so much with the necessity of one being a judgment creditor. Rather, the distinction properly drawn is whether the plaintiff is a general creditor or one with rights in the specific trust property in question. That is precisely the distinction drawn in *Amtitle*, 25 Ariz.App. at 185, 541 P.2d at 1169.

Stewart also argues that *Markel* is distinguishable since there the plaintiff specifically alleged a constructive trust. The *Markel* court did state:

> Transamerica ... was made a party to the suit and had full notice of the contract and of the pleadings in which it was alleged that there was a constructive trust on the funds paid under the sale.

103 Ariz. at 361, 442 P.2d at 105.

 It is true that the words constructive trust do not appear in the instant complaint. However, it is not necessary that a complainant specifically seek the imposition of a constructive trust. Bogert & Bogert, The Law of Trusts & Trustees § 472, at p. 33–35 (rev. 2d ed. 1978). A reading of the complaint would reasonably put Stewart on notice that Cracchiolo, and subsequently D'Antonio, claimed a specific interest in the proceeds of Trust no. 1905. In addition, Stewart through counsel was present for all proceedings. Through all this Stewart characterized itself merely as a stakeholder.

■ Stewart stood essentially in the shoes of Transamerica in *Markel*:

Transamerica was in no dilemma by which paying would result in a claim by plaintiff, and failure to pay would result in its being in contempt of court. *The court did not order it to pay Virginia.* Transamerica, first, could have paid the money into court under interpleader proceedings. Second, it could have held the money, explaining to Virginia that the matter was still subject to reversal on appeal. And, third, it could tell Virginia that it would not pay her the money pending the appeal unless she gave proper indemnification.

103 Ariz. at 362, 442 P.2d at 106 (emphasis in original). Thus, with notice of the claims of D'Antonio and Cracchiolo, Stewart disbursed the proceeds and may now be liable for it.

■ Stewart also argued that should this court find that *Markel* is applicable that this court should overrule the decision by the Arizona Supreme Court or hold it unconstitutional. We agree with the dissent that the supreme court should review its holding in *Markel* as it strains the definition of constructive trust. The court of appeals, however, is bound by the decisions of our supreme court. *McKay v. Industrial Commission,* 103 Ariz. 191, 438 P.2d 757 (1968). Stewart also contends that application of *Markel* in this situation would conflict with the decisions of the United States Supreme Court in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh. denied* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972), and *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). However, those cases held that pre-judgment seizures of property are unconstitutional absent prior notice and hearing. Here nothing is being seized from Stewart; Stewart maintained possession of the funds pending the decision of the court. In any event, Stewart received notice and an opportunity to be heard.

Therefore, the *Markel* case applies to the facts before us and the entire case as consolidated must be reversed and remanded for trial. We direct that the case remain consolidated for trial for purposes of judicial economy, in order that the trier of fact might have the complete picture of this litigation and to prevent a possibility of double recovery by the plaintiffs.

Reversed and remanded.

KLEINSCHMIDT, J., concurs.

FROEB, Judge, concurring in part; dissenting in part:

I agree with the majority decision relating to the appeal of Miller and Pugliani. There is a genuine issue of material fact which defeats summary judgment and requires a trial.

The appeal of Stewart Title & Trust of Tucson is in a clearly different category. This involves the theory of constructive trust and the limits to which it may be invoked by the court. The centerpiece from which liability springs is *Markel v. Transamerica Title Insurance Co.,* 103 Ariz. 353, 442 P.2d 97, *cert. denied sub nom. Phoenix Title & Trust Co. v. Markel,* 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968).

As the majority points out, plaintiffs had an unadjudicated claim for attorneys' fees against the assets of Trust No. 0891 in which Stewart Title was the trustee. The validity of this claim is in dispute and has yet to be tried. It should be noted that the claim is based upon written assignments of beneficial interest in the trust which were never forwarded to Stewart Title and are now apparently lost or destroyed. *This has everything to do with whether or not Stewart Title is liable to plaintiffs on a theory of constructive trust,* but it is not recognized by the majority of the court as material.

In January 1979, Pugliani and Miller transferred their interests in Trust No. 0891 into Trust No. 1905, a land trust also administered by Stewart Title as trustee. The land trust agreement provided that Miller and Pugliani each owned a fifty percent beneficial interest in the trust. No

other beneficiaries were named. Stewart Title had no knowledge whatever of any interest of the plaintiffs in the trust.

The terms of the trust are very clear that the interest of a beneficiary may only be transferred by *written assignment delivered to the trustee.* "No assignment of any interest hereunder (other than by operation of law) that is not so executed, delivered and accepted shall be binding upon the Trustee." Despite this, plaintiffs claim to be secret beneficiaries of the trust and would have the court impose a constructive trust against Stewart Title to satisfy their claim.

It should be noted that plaintiffs did not take steps to seize, garnish, attach, or freeze by injunction the beneficial interests of Pugliani and Miller held by Stewart Title. The claim against Stewart Title now said to give rise to a constructive trust rests upon the allegations of the complaint filed by plaintiffs, none of which are directed against Stewart Title. Plaintiffs contend that this was sufficient to require Stewart Title not to deal with the property as its contract with Pugliani and Miller required it to do. The dilemma thus created is one common to all holders of property belonging to others. If a creditor of the owner makes a demand against the holder, to whom must the holder respond? Will any claim so made interdict the performance of a contract and require the party "in the middle" to interplead at court to avoid the consequences?

The plaintiffs rely on *Markel v. Transamerica Title Insurance Co.* In my view the time has come for the Arizona Supreme Court to scrutinize this broad ruling and confine the remedy of constructive trust to its proper limits.

A constructive trust is a remedial device created by courts of equity to compel one who *unfairly holds a property interest* to convey that interest to another to whom it justly belongs.

*Arm, Inc. v. Terrazas,* 24 Ariz.App. 441, 442, 539 P.2d 915, 916 (1975) (emphasis added).

"A constructive trust arises by operation of law and not by agreement or intention. (citations) It is a *remedial* device (citation) *used whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest....*"

*In re Estate of Rose,* 108 Ariz. 101, 104, 493 P.2d 112, 115 (1972) (emphasis added).

One of the prerequisite factors necessary for the imposition of a constructive trust is the identification of a specific property, or res, in which the claimant has an interest. *Amtitle Trust Co. v. Fitch,* 25 Ariz.App. 182, 541 P.2d 1166 (1975). That factor was present in *Markel* but is not present in this case. In *Markel* a divorce decree had given the claimant a "one-half interest in any funds that may be obtained through" sale of certain marital real property. After the divorce, the former husband of the claimant remarried and his second wife became the titleholder of the land. She subsequently contracted to sell the land and the transaction led to an escrow at Transamerica Title Insurance Company. Learning of the sale, the claimant filed a claim against the title company and the second wife, demanding one-half of the proceeds from the sale. The title company closed the sales transaction and disbursed the proceeds to the second wife without recognizing the claimant's interest. It is important to note that in *Markel* the claimant had a vested property right in the res of the trust which had been granted to her by the divorce decree. The court held the title company liable to the claimant and imposed a constructive trust on the trust assets as of the date the proceeds were received. In the present case, no vested interest belonging to plaintiffs has been established in either Trust Nos. 0891 or 1905. That is because the terms of the trust itself provide that no assignment of a beneficial interest is valid

unless it is delivered to and accepted by the trustee. There is no evidence that this occurred. Therefore, the claim of plaintiffs in the trust res fails and with it falls the remedy of a constructive trust. *See De-Mello v. Home Escrow, Inc.*, 659 P.2d 759 (Hawaii Ct.App.1983). For this reason, the summary judgment in favor of plaintiffs against Stewart Title should be reversed and the trial court should be directed to enter judgment in favor of Stewart Title dismissing the complaint.

While *Markel* can thus be distinguished, it should, in my opinion, be overruled by the Arizona Supreme Court. It stands alone on the subject of constructive trust because it imposes the remedy against a party without any finding that the property was obtained by fraud, misrepresentation, concealment, undue influence, duress or any other wrongdoing. *See, e.g., In re Estate of Rose.* Absent this key element to which equity rightfully responds, the imposition of the remedy is nothing more than an expedient shortcut for bypassing the judicially supervised remedies of garnishment, attachment and injunction without satisfying the requirements of notice, hearing, and the posting of security. These pre-judgment remedies and their sometimes burdensome convolutions are circumvented if all a claimant need do is voice a claim against property in the hands of another. Everyday transactions would halt at the mere suggestion, perhaps a phone call or a letter, of a claimed interest in property or to a fund of money. In my view, *Markel* is a broad departure from the common-law precept that a constructive trust is an equitable remedy to prevent unjust enrichment. *See, e.g., Restatement of Restitution* § 160 (1937).

In summary, I would direct the entry of judgment dismissing the plaintiffs' complaint against defendant Stewart Title. The plaintiffs' claim, if it be meritorious, lies against defendants Pugliani and Miller. They are the parties who owe money to the plaintiffs, if anyone does.