697 P.2d 674

**BURCH & CRACCHIOLO, P.A. and D'Antonio & D'Antonio, Plaintiffs-Appellees,**

**v.**

**Albino PUGLIANI and Lenora Pugliani, husband and wife; Theron A. Miller, Defendants-Appellants,**

**and**

**Stewart Title & Trust of Tucson, an Arizona corporation, Defendant-Appellant.**

**No. 17635–PR.**

Supreme Court of Arizona, En Banc.

March 5, 1985.

Burch & Cracchiolo by Jack Daniel Klausner, and Bryan F. Murphy, Phoenix, for plaintiffs-appellees Burch & Cracchiolo.

D'Antonio & D'Antonio by Gregory D. D'Antonio, and Patricia A. Ihnat, Tucson, for plaintiffs-appellees D'Antonio & D'Antonio.

Law Offices of Joel D. Sacks by Joel Sacks and Carl D. Lee, Tempe, for defendants-appellants Pugliani and Miller.

Malloy, Jones, Donahue, Trachta, Childers & Mallamo by John F. Molloy and Dan-

iel F. Davis, Tucson, for defendant-appellant Stewart Title & Trust of Tucson.

HAYS, Justice.

Petitioners Stewart Title & Trust (Stewart) held approximately $175,000 in trust. The beneficiaries of record for this trust were Albino Pugliani, Lenora Pugliani, his wife, and Theron Miller. Respondents Burch & Cracchiolo and D'Antonio & D'Antonio (the lawyers) both claimed an interest in the trust. This claim stemmed from a prior contingent fee arrangement that the lawyers had with Pugliani and Miller (the clients).

The lawyers eventually sued both the clients and Stewart. The lawyers sought assignment of a portion of the trust *res.* The trial court granted summary judgment for the lawyers. Shortly before formal entry of judgment, Stewart disbursed the entire trust *res* to the clients. Disbursement on demand was required by Stewart's trust agreement with the clients. The lawyers amended their complaints to seek damages, jointly and severally, against both the clients and Stewart. The trial court granted the lawyers' motions for summary judgment on these amended complaints. Stewart and the clients both appealed.

The court of appeals reversed these judgments. *Burch & Cracchiolo, P.A. v. Pugliani,* 144 Ariz. 305, 697 P.2d 698 (1984) [ (Froeb, J., concurring in part, dissenting in part) ]. It held that disputed issues of material fact precluded summary judgment against the clients. The claims of both Stewart and the clients were remanded for retrial. As for Stewart, the majority held that if the clients were subsequently found liable to the lawyers, then Stewart could be held jointly and severally liable based on the constructive trust theory established in *Markel v. Transamerica Title Insurance Co.,* 103 Ariz. 353, 442 P.2d 97 (1968), *cert. denied, sub nom. Phoenix Title & Trust Co. v. Markel,* 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968).

Stewart petitioned this court for review. The lawyers cross-petitioned, contending they were entitled to summary judgment as a matter of law. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and 17A A.R.S. Civil Appellate Proc. Rules, Rule 23.

We denied the petition of the lawyers; they may go to trial on their claims against the clients. We granted Stewart's petition to consider only one issue: Shall a trust company, trustee, be held liable as a constructive trustee for disbursing trust funds to named beneficiaries, as required by the trust agreement, merely because the trustee receives notice of conflicting claims of ownership from third parties who are strangers to the agreement? We believe that a trust company, in this position, should not be held liable as a constructive trustee. We overrule *Markel v. Transamerica Title Insurance Co., supra.*

The facts follow. In 1973 Henry Buetel owned the beneficial interest in a trust (No. 0891). The corpus of the trust was 28 acres of Tucson real estate. Eleven acres were undeveloped; seventeen acres had apartment buildings. The trustee, Stewart Title & Trust (Stewart), held legal title to the property. American Savings & Loan (American) held the mortgage on the 28 acres.

Apparently, Buetel failed to pay American. With foreclosure imminent, Buetel transferred his beneficial interest to Theron A. Miller for $10,000. Miller's partner in this acquisition was Albino Pugliani.

Miller and Pugliani (the clients) retained Lawrence D'Antonio to defend against American's attempted foreclosure. To assist in this lawsuit, D'Antonio subsequently associated with another law firm, Burch & Cracchiolo. The exact fee arrangement between D'Antonio, Burch & Cracchiolo (the lawyers) and the clients is now disputed. The clients contend that they agreed to a contingent fee arrangement whereby the lawyers would receive 50% of the income produced from the trust. The lawyers, on the other hand, maintain that they were to receive both 50% of the income produced

and 50% of the proceeds of any sale of the underlying trust property.

This fee controversy arose in the following manner. During the lawyers' representation of the clients, the apartments on the trust property produced income. That income financed the litigation. Initially, the income was divided into four equal portions: each law firm and each client received a 25% interest. Miller was the sole beneficiary of record for the trust until January of 1977. In that month, Miller executed three assignments of 25% interest to Pugliani, D'Antonio and Burch & Cracchiolo. The reason for these assignments is now hotly disputed. The lawyers did not forward their assignments to Stewart so it could modify the trust agreement to reflect this change in ownership. The assignment documents are now lost.

In September of 1978 the foreclosure litigation was settled. The clients agreed to pay American $112,000 in exchange for clear title to the 11-acre undeveloped portion of the property. The clients then sought contribution from the lawyers for this $112,000 cash payment. Both law firms refused to contribute. However, both firms agreed that in the event this 11-acre tract was sold, the clients could recoup their $112,000 before any of the remaining proceeds would be divided.

In January of 1979, the clients transferred the corpus of the original trust (the 11-acre tract) into a new trust account (No. 1905) also held by Stewart. The beneficiaries in this new trust were Albino Pugliani, Lenora Pugliani, his wife, and Theron Miller. Miller and Pugliani each held a 50% interest. The lawyers were unaware of this transfer. The transfer was possible, however, only because the lawyers did not inform Stewart of their assignments in the original trust (No. 0891).

In June of 1979, the clients sold the property for $325,000. The buyer paid $144,424 in cash and gave a promissory note for $175,000. The note was deposited in the trust account (No. 1905); the clients deducted their $112,000 contribution from the $144,424 cash payment and divided the

remaining $25,876 equally among the four parties (the two law firms and the two clients). The amount owing on the promissory note is now the subject of the present dispute.

When the lawyers discovered that the clients had changed trust accounts, they sought assignment of 25% interest, as they both possessed in the original trust (No. 0891). The clients refused. On May 5, 1980, the lawyers filed suit alleging breach of fee agreement. The complaint named Theron Miller, his wife, Albino Pugliani, and Stewart Title as parties. This was the first time that Stewart had knowledge of the lawyers' claims.

The lawyers' complaint sought to compel Stewart to divide ownership in the new trust account (No. 1905) equally among the four parties. The lawyers also demanded an accounting of the proceeds received since the distribution of the $144,424 down payment, judgment for their share of these amounts, and an order confirming their share in future payments of the promissory note.

On July 15, 1980 Stewart paid the clients $16,601. That amount represented a further payment on the note by the buyer of the 11-acre tract. Stewart made this payment to the clients as required by its trust agreement with them, but after it had notice of the lawyers' claims.

Clients and lawyers filed motions for summary judgment. On February 6, 1981, the trial court held a hearing on the pending motions. Stewart was represented at the hearing but chose to make no argument. The trial court granted the lawyers' motions for summary judgment against the clients. The clients' motions were denied.

On February 9, 1981, upon demand by the clients, and as required by the trust agreement, Stewart disbursed all trust proceeds to Miller and Pugliani and closed out the trust. This disbursal was after minute entry of summary judgment, but before final entry of judgment could be accomplished. Final payment into the trust was not due until June of 1981, but apparently

the clients had arranged for accelerated payment of the promissory note. When the lawyers learned that the trust had been disbursed, they amended their complaints to allege a claim, in the nature of damages, against both the clients and Stewart, jointly and severally.

On March 16, 1981, the trial court entered summary judgment on these amended complaints in favor of the lawyers and against the clients. Each law firm was awarded $47,193 plus attorney's fees and costs. The clients appealed.

On August 26, 1981, the trial court entered summary judgment on the amended complaints, seeking "damages" in favor of the lawyers and against Stewart. Burch & Cracchiolo were awarded $57,393; D'Antonio was awarded $53,502. Both firms were awarded attorneys' fees and costs. Stewart appealed.

The court of appeals consolidated both the clients' and Stewart's appeals. It reversed both judgments. With regard to the clients, the court held that disputed issues of material fact existed and consequently precluded summary judgment. With regard to Stewart, summary judgment was necessarily reversed, since Stewart's liability turned on the clients' liability. *Burch & Cracchiolo, P.A. v. Pugliani, supra.*

The majority in the court of appeals decision believed, however, that Stewart must remain a party when the case is remanded for retrial. The court found that in the event the clients are subsequently held liable, then Stewart could also be held jointly and severally liable under the constructive trust theory established in *Markel v. Transamerica Title Insurance Co., supra.*

Both the dissent and the majority in *Pugliani* agreed that we should review our holding in *Markel* because it "strains the definition of constructive trust." *Burch & Cracchiolo, P.A. v. Pugliani, supra,* 144 Ariz. at 312, 697 P.2d at 705.

In *Markel,* the court found that a title company/trustee could be held liable if it disburses trust funds after receiving notice, through a complaint, that third parties claim ownership to a portion of the trust *res.*

In *Markel,* a wife divorced her husband. The divorce decree granted the wife a one-half interest in the proceeds from any future sale of a portion of Arizona real property. After the divorce, the husband remarried and subsequently transferred this encumbered property to his second wife. Eventually, the second wife sold the property. This sale was conducted through an escrow/trust arrangement. Each time the buyer made a payment, the escrowee/trustee would release a portion of the property and then disburse the payment to the second wife. One-half of this payment, however, belonged to the first wife. When she discovered the sale, she sued both the second wife and the title company. With notice of the first wife's claims, and during pendency of litigation, the title company continued to pay the second wife the disputed funds. The court found the title company/trustee liable, stating:

> We hold, therefore, that in the instant case Transamerica was a constructive trustee from the time that it was served with notice of this action; that, though innocent of any fraud, its duty as constructive trustee was to hold all money that came into its hands under trust No. 2197 until the final disposition of this case; and that the turning over of the money to Virginia [the second wife] was a breach of its duty to plaintiff, and therefore wrongful.

*Markel v. Transamerica Insurance Co., supra,* 103 Ariz. at 360, 442 P.2d at 104.

A constructive trust is an equitable remedial device, generally used to prevent unjust enrichment. *See generally* Dan B. Dobbs, *Handbook on the Law of Remedies,* § 4.3 (1973). In particular, a constructive trust will arise whenever it is inequitable that property should be retained by the legal title holder. *Raestle v. Whitson,* 119 Ariz. 524, 526, 582 P.2d 170, 172 (1978). The remedy of constructive trust has been applied in a variety of cir-

cumstances. Yet the doctrine is not without limits.

For reasons that follow, we hold that *Markel* transgresses those limits. The court in *Markel* found that the second wife had obtained property through fraud. This fraud justified imposition of a constructive trust on that part of the proceeds rightfully belonging to the first wife that came into the second wife's possession. *Markel v. Phoenix Title & Trust,* 100 Ariz. 53, 410 P.2d 662 (1966). This was the first Markel case.

In the second Markel case, the court addressed the issue of Transamerica's (the escrow/trustee) liability for disbursing the funds after having notice of the first wife's claims. "We carefully refrained from mentioning Transamerica [in the first Markel case] because there was no evidence of any fraud on its part. But, if the proceeds are encumbered by a constructive trust, the person holding them, with knowledge of the facts, must of necessity be a constructive trustee." *Markel v. Transamerica Title Insurance Co., supra,* 103 Ariz. at 359, 442 P.2d at 103. Despite the absence of wrongdoing or unjust enrichment, Transamerica was deemed a constructive trustee. There was not even any trust *res* upon which the constructive trust could be imposed.

■ A constructive trust is typically imposed when there is a *wrongful holding* of property which unjustly enriches the defendant at the expense of the plaintiff. *Harmon v. Harmon,* 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (App.1980). The constructive trust in *Markel,* however, was imposed on the trustee for acting in accord with the terms of its trust agreement with the second wife:

> We hold, therefore, that the disbursement of the proceeds of the sale of the property by Transamerica to Virginia [the second wife] *even though made in the utmost good faith, and pursuant to a written agreement,* was—after it had knowledge of plaintiff's claim of a constructive trust—both a breach of its duty

as trustee, and conversion of such funds. (Emphasis added.)

*Markel v. Transamerica Title, supra,* 103 Ariz. at 361, 442 P.2d at 105.

■ A prerequisite to the imposition of a constructive trust is the identification of a specific property belonging to the claimant. *Barrasso v. First Nat. Bank,* 122 Ariz. 469, 471, 595 P.2d 1014, 1016 (App.1979). Yet, in *Markel,* a constructive trust was imposed despite the fact that Transamerica had, long before judicial imposition of the trust, disbursed all the trust funds and closed out the account. A general claim for money damages will not give rise to a constructive trust. *Amtitle Trust Co. v. Fitch,* 25 Ariz.App. 182, 184, 541 P.2d 1166, 1168 (1975).

■ In *Markel,* imposition of a constructive trust was possible because the court reasoned that the trust reached back to the time when the trustee was served with notice of the action. Granted, a constructive trust is generally seen as arising when the duty to make restitution arises—when the wrong occurs. 5 *Scott on Trusts,* § 462.4, (3rd ed. 1967). According to *Markel,* however, there was no duty to make restitution:

> In the instant case, however, Transamerica did not take the property or money directly from the possession of plaintiff. The money was received by Transamerica from the buyer of the property, and was turned over to Virginia [the second wife] without consideration. *This makes the doctrine of restitution inapplicable, because of the lack of any unjust enrichment by Transamerica.* (Emphasis added.)

*Markel v. Transamerica Title, supra,* 103 Ariz. at 362, 442 P.2d at 106. Perhaps this is the most puzzling aspect of *Markel.* Most writers consider the constructive trust as a restitutionary remedy, based on the defendant's unjust enrichment and firmly grounded in equity. Restatement (Second) of Restitution § 30 (Tent.Draft No. 1, 1983); Dan B. Dobbs, *Handbook on the Law of Remedies,* § 4.3 (1973); George E. Palmer, *I The Law of Restitution* § 1.4

(1978). Here, Transamerica was not unjustly enriched by performing its contract, and the theory upon which the constructive trust was imposed is not restitution.

■ Stewart now finds itself in a similar position to the trustee, Transamerica, in the Markel case. Despite the conspicuous absence of wrongdoing, trust *res*, and unjust enrichment, Stewart faces the possibility of the imposition of a *Markel*-type constructive trust. It may be that it is a contradiction in terms to say constructive "trust." A trust presumes a *res*. Rather, Stewart now faces the possibility of paying the lawyers something in the nature of damages if the clients are adjudicated to be in breach of their agreement with the lawyers.

■ It is true Stewart paid the trust money to the clients after learning of the lawyers' claims. Nevertheless, Arizona law requires the trustee to follow the trust agreement. *Minnesota Title Co. v. Congress Industries*, 116 Ariz. 549, 551, 570 P.2d 491, 493 (1977); *Valley National Bank v. Hartford Accident & Indemnity Co.*, 60 Ariz. 286, 289, 136 P.2d 458, 459 (1943). We cannot say, faced with this dilemma, that Stewart became a wrongdoer when it complied with its trust agreement. *Cf.* Restatement (Second) of Trusts § 226 (1959) (Liability for Payments or Conveyances Made to Persons Other Than the Beneficiary).

The trust agreement[1] provided in relevant part, "No assignment of any interest hereunder (other than by operation of law) that is not so executed, delivered and accepted shall be binding upon the Trustee." Although the lawyers did have assign-

ments to the first trust, they failed to forward these assignments to Stewart. Had the lawyers forwarded their assignments to Stewart, in all likelihood the clients would not have been able to switch trust accounts without consent of the lawyers. With the clients refusing to execute assignments to the lawyers in the second trust, it seems clear that if the lawyers had an interest in it, it was only through operation of law.

■ We find there was no assignment by operation of law. The court did award summary judgment for the lawyers on February 6, 1981. Stewart's counsel was present when this occurred. This minute entry of summary judgment, however, never progressed to actual entry of judgment, since on February 9, 1981, Stewart disbursed all the trust funds to the clients. Without actual entry of judgment there could be no assignment by operation of law. A minute entry, even though incorporating an order, lacks the legal effect of a formal judgment, decree or order, since it is not signed by the judge. *Lamb v. Superior Court*, 127 Ariz. 400, 404, 621 P.2d 906, 910 (1980). The trial court's later summary judgment on August 6, 1981 was based on the lawyers' amended complaints seeking damages and after Stewart had disbursed all the trust *res*.

■ Stewart disbursed the entire trust before any assignment by operation of law. To allow imposition of a constructive trust on Stewart now, based on the *clients'* unjust enrichment, seems folly. It is the clients, not Stewart, that now possess the trust *res;* it was the clients that may have been unjustly enriched; and if so, it is upon

1. The assignment provision of the trust agreement (No. 1905) provided:

"METHOD OF ASSIGNING INTEREST OF BENEFICIARY: The interest of a beneficiary, or any part thereof, may be transferred only by a written assignment thereof, executed in duplicate and delivered to the Trustee. The Trustee shall note its acceptance on the original and duplicate original of such assignment, retain the original thereof and deliver the duplicate original to the assignee as and for his or her evidence of ownership of a beneficial interest hereunder. No assignment of any interest hereun-

der (other than by operation of law) that is not so executed, delivered and accepted shall be binding upon the Trustee. No assignment of any interest hereunder, which includes the power to direct the Trustee to convey or otherwise deal with the trust property, shall be valid without the written approval of all of the other beneficiaries who possess such power of direction. No person who is vested with said power of direction, but who is not a beneficiary hereunder, shall assign such power without the written consent of all the beneficiaries."

the clients that a constructive trust might be imposed. Certainly, Stewart avoided being sued for breach of trust agreement when it paid the clients. But surely this does not rise to the level of unjust enrichment.

Allowing the mere filing of a complaint to prevent the disbursal of a trust is too much remedy for too little wrong. This does not mean, however, that creditors of a trust are left without remedy or without the ability to halt the wrongful or premature disbursement from a trust.

To this end, we believe that there are other, more appropriate, remedies. An injunction, for instance, was initially used in *Markel*. This procedural device could have prevented disbursal of trust proceeds, and its accompanying bond would have protected both Stewart and the clients from any frivolous action. *See* A.R.S. § 12–1801; 16 A.R.S. Rules of Civil Proc., Rule 65 (Injunctions). Garnishment is another method by which the lawyers could have halted Stewart's disbursal of the trust. *See Realty Exchange Corp. v. Phoenix Title & Trust Co.*, 15 Ariz.App. 199, 202, 487 P.2d 420, 423 (1971); A.R.S. § 12–1558(A) (Property subject to execution); Restatement (Second) of Trusts § 147 comment c (1959).

The *Markel* constructive trust doctrine does not fit into the category of cases where a constructive trust may be properly imposed. To our knowledge *Markel* has never been followed. In those cases where *Markel* was cited, and arguably applicable, it was distinguished. *Amtitle Trust Co. v. Fitch, supra; DeMellow v. Home Escrow*, 659 P.2d 759 (Hawaii App.1983).

Accordingly, we hold that a trustee may not be held liable, under a *Markel*-type constructive trust theory, for disbursing trust funds to named beneficiaries after merely receiving a complaint alleging conflicting claims of ownership. We overrule *Markel v. Transamerica Title Insurance Co.*, 103 Ariz. 353, 442 P.2d 97 (1968), and we vacate that portion of the court of appeals opinion concerning Stewart Title & Trust. We remand to the trial court on those remaining issues, as indicated in the court of appeals opinion.

Further ordered that judgment be entered for Stewart Title & Trust.

HOLOHAN, C.J., and CAMERON and FELDMAN, JJ., concur.

*Note:* FRANK X. GORDON, Jr., Justice, did not participate in the determination of this matter.